Submitted on record and brief November 27, 1991, accused disbarred
February 6, 1992

In re Complaint as to the Conduct of

## William H. JONES,
*Accused.*

(OSB 90-4, 90-97; SC S38439)

825 P2d 1365

Mary A. Cooper, Assistant Disciplinary Counsel, Oregon State Bar, Lake Oswego, filed the brief for the Oregon State Bar.

No appearance *contra.*

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar charged the accused with 12 violations of disciplinary rules in five causes of complaint. The first three causes of complaint concern the failure of the accused to appear in behalf of clients during the summer of 1989. The fourth cause alleges that the accused failed to cooperate with the Bar's investigation into that conduct. The fifth cause charges the accused with engaging in the unauthorized practice of law during 1990, after he had been suspended by this court for violation of disciplinary rules. Following a hearing, the trial panel concluded that the accused was guilty of substantial misconduct in each of the incidents alleged and that the misconduct warranted disbarment. On automatic *de novo* review, ORS 9.536(3) and BR 10.6, we find the accused guilty of repeated and substantial professional misconduct. We disbar him from the practice of law.

## I. DISCIPLINARY RULE VIOLATIONS

### A. *Failure to Appear in Behalf of Clients*

In its first cause of complaint, the Bar alleged misconduct in the accused's representation of Michael Hall. The accused neither appeared nor arranged for substitute counsel to appear at Hall's June 1989 marriage dissolution trial. As a result, Hall represented himself in an adversarial hearing without legal advice or preparation and without access to legally relevant documents that he had entrusted to the accused.

The Bar's second cause of complaint concerns the accused's representation of Penny Sue Taylor. In July 1989, the accused failed to appear at the time and place set for Taylor's marriage dissolution trial.

The accused contended that he informed both Hall and Taylor in advance that he was too ill to appear in court and that they both declined his offer to seek continuances or substitute counsel, preferring instead to appear unrepresented. We accept as fact that the accused was ill, but do not accept his assertion that his clients voluntarily chose to appear at trial without counsel. We are persuaded by the testimony of both clients that they waited in the courtroom

for the accused at the appointed time and were surprised and upset by his absence.

In its third cause of complaint, the Bar charges misconduct in a third trial in the summer of 1989 at which the accused failed to appear in behalf of a client. Connie Jo Carter McClellan hired the accused to seek increased child visitation under her decree of dissolution. The accused failed to appear for McClellan's hearing on the matter. Unlike Hall and Taylor, McClellan did know that the accused was too ill to appear in her behalf, but not until the morning set for trial. McClellan's case was dismissed, not because she appeared without counsel, but because she earlier had failed to attend court-mandated mediation.[1]

The Bar alleged that, in his representation of Hall, Taylor, and McClellan, the accused violated DR 1-102(A)(4)[2] (engaging in conduct prejudicial to the administration of justice), DR 6-101(A)[3] (failure to provide competent representation to a client), and DR 6-101(B)[4] (neglect of a legal matter). The trial panel found clear and convincing evidence that, in each of the three cases, the accused violated DR 1-102(A)(4) and DR 6-101(B), but not DR 6-101(A).[5] We agree.

We conclude that the accused's conduct prejudiced the administration of justice in each of the three matters

---

[1] The Bar alleged that the accused was responsible for the dismissal of McClellan's case because he failed to notify McClellan about the mediation. We disagree. The accused presented persuasive evidence that he *did* attempt to notify McClellan by mail and by telephone, but that she had moved to another city without leaving a forwarding address or telephone number.

[2] DR 1-102(A)(4) provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"Engage in conduct that is prejudicial to the administration of justice[.]"

[3] DR 6-101(A) provides:

"A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."

[4] DR 6-101(B) provides:

"A lawyer shall not neglect a legal matter entrusted to the lawyer."

[5] The Bar concedes that its allegations of incompetence are not supported by clear and convincing evidence in the record.

described by leaving his unprepared clients to fend for themselves in adversarial proceedings. *See In re Bridges*, 302 Or 250, 728 P2d 863 (1986) (failure to appear at client's trial prejudicial to administration of justice). We also conclude that the accused neglected legal matters in each instance cited. Accepting the accused's contention that he was too sick during the summer of 1989 to appear in court, his obligation not to neglect legal matters could have been met by seeking continuances, by engaging substitute counsel to "cover" for him, or by giving his clients sufficient advance notice to retain new lawyers. He did none of those things. We cited similar conduct as neglectful in *In re Lewelling*, 298 Or 164, 690 P2d 501 (1984), and *In re Boland*, 288 Or 133, 602 P2d 1078 (1979).

## B. Failure to Respond to Inquiries

A circuit court judge familiar with the Hall, Taylor, and McClellan cases lodged complaints with the Bar against the accused regarding the described conduct. The Bar initiated an investigation by referring the matter to the Local Professional Responsibility Committee (LPRC). The LPRC sent a letter to the accused. The accused claimed that he responded by leaving two telephone messages with a member of the LPRC other than the one with whom he was asked to communicate, although there is testimony that no messages were received. The accused admitted to the trial panel that he made no serious attempt to aid the investigation, saying he was "in a very bad mood," and was "fed up and disgusted" because he believed that the allegations against him lacked merit.

DR 1-103(C) requires a lawyer to "respond fully and truthfully to inquiries" in a disciplinary investigation, "subject only to the exercise of any applicable right or privilege," regardless of the lawyer's assessment of the merits of the complaints. *In re Benjamin*, 312 Or 515, 521, 823 P2d 413 (1991). The accused claimed no defense of exercising a right or privilege. We conclude that the accused failed to respond to the LPRC inquiry because he was hostile to the investigation. Although the accused did fully cooperate in subsequent proceedings, he violated DR 1-103(C) by not communicating with the LPRC as requested.

## C. Unauthorized Practice of Law

In October 1989, this court sanctioned the accused for permitting a nonlawyer to use his name in furtherance of a scheme to process marriage dissolutions fraudulently. *In re Jones*, 308 Or 306, 779 P2d 1016 (1989). We suspended the accused from the practice of law for six months and notified him that he would be required to submit a formal application to the Bar before the suspension would be lifted. *Id.* at 313. He never applied for reinstatement.

At the time that the accused was suspended from practice, he was representing Paul Johnson in a claim regarding inadequate medical attention in the Jackson County jail. The accused neither withdrew from the case nor notified the court or Jackson County's lawyer that he had been suspended and no longer could represent Johnson. For several months after his suspension, the accused attempted, on his own, to find substitute counsel for Johnson, who subsequently had moved out of state.

In April 1990, realizing that a filing deadline was approaching and that Johnson still had no lawyer, the accused prepared and submitted to the Jackson County lawyer a proposed pre-trial order with a cover letter requesting that the order be approved and submitted to the federal district court in which the complaint had been filed.[6] The Jackson County lawyer testified before the trial panel that, between April and July, the accused corresponded regularly with him about this and a number of other pre-trial issues in the Johnson case, including arranging for depositions and providing discovery of medical evidence. On more than one occasion, the accused signed his name over the caption "of attorneys for plaintiff." The accused did not at any time correct the Jackson County lawyer's reasonable impression that the accused was Johnson's lawyer.

The accused's claim that, in his dealings with the Jackson County lawyer, he represented Johnson in some capacity other than as his lawyer is unpersuasive. By its nature, the conduct described is the practice of law. We

---

[6] The accused's proposed order did not comply with local court rules, so the Jackson County lawyer prepared a substitute order, which the accused later signed in Johnson's behalf, then submitted to the court.

conclude that the accused practiced law despite an explicit order from this court not to do so and that, in doing so, he violated DR 3-101(B).[7]

In summary, we find the accused guilty of misconduct in each of the five causes of complaint charged by the Bar. We turn now to the sanction.

## II. SANCTION

In determining the appropriate sanction, this court is guided by the Standards for Imposing Lawyer Sanctions, published by the American Bar Association in 1986. *In re Hedrick*, 312 Or 442, 822 P2d 1187 (1991). The ABA Standards set out four factors to be weighed in setting sanctions: the ethical duties violated, the lawyer's mental state, the extent of injury, and the presence of aggravating or mitigating factors. We address each factor in turn.

### A. *Ethical Duties Violated*

By failing to appear at his clients' trials and by providing only limited cooperation with the Bar's investigation of this conduct, the accused breached duties owed to his clients, to the legal system, and to the legal profession. ABA Standards 4.4, 6.0, and 7.0. By failing to refrain from the practice of law in compliance with this court's 1989 discipline order, the accused disobeyed this court's order and breached his duty to the legal system. ABA Standard 8.0.

### B. *Mental State*

We conclude that in each of the violations related to failure to appear in behalf of a client, the accused acted knowingly.[8] He was aware that his illness would prevent him from representing his clients at trial. He must have known that his clients and others would be prejudiced by his unexplained and unexpected absence.

The accused also acted knowingly in failing to cooperate with the Bar's investigation. Presuming that he,

---

[7] DR 3-101(B) provides:

"A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."

[8] The Standards for Imposing Lawyer Sanction, section 3.0, contemplate three mental states: "intent, knowledge, or negligence."

indeed, placed telephone calls to an LPRC member, he acknowledged that he did not call the person that he was asked to call. His consciously hostile attitude toward the investigation precluded meaningful cooperation. He knew or should have known that this conduct breached his duty to the legal profession.

The accused intentionally engaged in the unauthorized practice of law. He had been suspended six months before he began three months of communication with counsel representing his "former" client's opponent in an ongoing legal action. Having practiced law for nearly 40 years, the accused certainly recognized the tasks he performed in Johnson's behalf as the practice of law.

### C. Injury

The accused asserted that no one was injured by his conduct, so no sanction is warranted. Although actual injury is important in imposing lawyer sanctions, potential injury[9] also is significant. The potential for injury to clients is profound when a lawyer fails to appear in court in behalf of clients; clients justifiably rely on their lawyers to recognize and handle legal and procedural problems as they arise and cannot be expected to fill a lawyer's role adequately on the spur of the moment. Although the actual injuries sustained by the accused's clients were not as severe as they might have been, there were injuries. We conclude that Hall was injured by not having had an opportunity to introduce into evidence those documents that Hall had entrusted to the accused for presentation at trial. Hall, Taylor, and McClellan all suffered injury in the form of substantial anxiety and aggravation. *See In re Arbuckle*, 308 Or 135, 140, 775 P2d 832 (1989) (anxiety and aggravation as client injury in setting disciplinary sanction).

There is no evidence of actual injury caused by the accused's unauthorized practice of law. There was a potential for injury to the public and to the legal system in the accused's

---

[9] Potential injury is defined in the ABA Model Standards:

" 'Potential injury' is the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

implicit misrepresentation to lawyers and courts that he was authorized to practice law. There is a continuing threat of potential public injury in the accused's attitude that the practice of law can be redefined at will so as to avoid following an order of this court.

We conclude that, in the absence of aggravating and mitigating factors, either suspension or disbarment is warranted. ABA Standards 4.4, 7.2 and 8.1. We turn next to aggravation and mitigation.

### D. *Aggravating and Mitigating Circumstances*

Aggravating factors present in this case include prior disciplinary offenses, *see In re Jones, supra,* a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of the conduct, and substantial experience in the practice of law (the accused has been a member of the Bar since 1951).

Mitigating factors include the absence of a dishonest or selfish motive and the presence of physical impairment.[10]

## III. CONCLUSION

The misconduct of the accused in failing to appear at trial in behalf of three separate clients and failing to cooperate with the Bar's investigation, standing alone, would support a sanction of suspension from the practice of law. Intentionally continuing to practice law in the face of this court's earlier suspension supports disbarment.

As noted above, there are a substantial number of aggravating factors present in this case. Among the most disconcerting is the continued refusal of the accused to recognize the wrongfulness of his conduct; he persistently has justified misconduct by labeling it harmless or well-intentioned. The mitigating factors are not sufficiently weighty to reduce the sanction. We conclude that the facts of this case justify disbarment of the accused from the practice of law.

---

[10] Although the accused was ill, we conclude that he was not so ill as to be unable to communicate with his clients or the courts. His testimony suggests that he recognized the potential harm of failing to appear for a client on the day of trial but did nothing to warn or protect his clients because of his inexplicable conviction that the clients could represent themselves adequately.

The accused is disbarred. The Oregon State Bar is awarded its actual and necessary costs and disbursements. ORS 9.536(4).