Argued and submitted September 11, 1998, accused disbarred January 22, 1999

# In re Complaint as to the Conduct of

## JOHN J. DEVERS,
*Accused.*

## (OSB 93-175, 94-96; SC S39997)

974 P2d 191

John J. Devers, Portland, argued the cause and filed the briefs *in propria persona*.

Mary A. Cooper, Disciplinary Counsel, Lake Oswego, argued the cause and filed a brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this disciplinary proceeding, a trial panel of the Disciplinary Board found that the accused committed multiple violations of the Code of Professional Responsibility, namely, disciplinary rules (DR) 1-102(A)(3)[1] and DR 3-101(B)[2] and suspended him from the practice of law for 15 months. Because that suspension was more than six months, this court automatically reviews the trial panel's decision. ORS 9.536(2); Rule of Procedure (BR) 10.1. Our review is *de novo*. ORS 9.536(3); BR 10.6. On review, the Oregon State Bar (Bar) contends that the accused's misconduct warrants disbarment. For the reasons that follow, we agree. However, before turning to the merits, we address procedural matters that potentially are dispositive.

## I. DUE PROCESS CLAIMS

The accused contends that he was denied due process of law in three respects. His first allegation is that he was denied due process of law when the trial panel chair denied his motion to adjourn the trial panel hearing on November 20, 1996. The Bar responds that the chair of the trial panel did not abuse his discretion in denying the accused's motion.

The "essential elements" of due process in the context of a lawyer discipline proceeding are notice and an opportunity to be heard and defend "in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause." *In re J. Kelly Farris*, 229 Or 209, 214, 367 P2d 387 (1961) (quoting *Fuller-Toponce Truck Co. v. Public Service Commission*, 99 Utah 28, 96 P2d 722, 725 (1939)). In order to determine whether the accused's due process rights were violated in this case, we must describe in some detail the context in which the claimed deprivation occurred.

---

[1] DR 1-102(A)(3) provides:

"It is professional misconduct for a lawyer to * * * [e]ngage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[2] DR 3-101(B) provides:

"A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."

On November 14, 1996, less than a week before the trial panel hearing was to begin, the accused filed motions to have counsel appointed to represent him and to reschedule the hearing date. At the outset of the hearing on November 20, he renewed those motions. He argued that the hearing should be adjourned and rescheduled because, on November 11, he had discharged the lawyer who had been representing him. The accused contended that he needed more time to prepare for the hearing in order to respond to the Bar's witnesses and "to obtain counsel to assist me in this matter." He conceded that the charges against him, which we discuss later in this opinion, had not changed during the many months that the proceeding had been pending and that there were "no surprises" on the list of witnesses that the Bar planned to call at the hearing. The accused also reiterated that he would admit to the charges that he practiced law during the period of his administrative suspension. However, he contended that, if the Bar planned to call witnesses to testify "as to those admitted issues," then he was entitled to attack their credibility and needed more time to prepare to do so. After conferring off the record with the trial panel members, the trial panel chair denied the accused's motion to adjourn and also limited the testimony of the witnesses "to the extent there has been an admission."

On this record, we find no error. The accused admitted to practicing law during his administrative suspension, and the trial panel chair limited the testimony of witnesses as noted above. The accused makes no argument about what impact, if any, impeachment evidence might have had on issues of mitigation.

■ The accused also contends that his due process rights were violated when the trial panel denied his motion for appointed counsel. According to the accused, disciplinary proceedings are quasi-criminal, and "[q]uasi-criminal proceedings carry certain constitutional protections including the right to counsel." He contends that the right to be represented by counsel includes the right to be represented by *appointed* counsel. The Bar responds that, although this court has not addressed specifically whether accused lawyers have the right to appointed counsel in disciplinary proceedings, other jurisdictions have rejected that argument.

This case does not provide the opportunity to address the merits of an accused's entitlement to appointed counsel in disciplinary proceedings. Even assuming that this court might recognize such a right, where the right to appointed counsel exists, the person asserting the right must be indigent. *See Lassiter v. Department of Social Services,* 452 US 18, 25, 101 S Ct 2153, 68 L Ed 2d 640 (1981) (describing indigent litigants' right to appointed counsel).

Although the accused's motion for appointed counsel stated that he "is currently without sufficient funds to retain counsel," he presented no evidence of indigency and he makes no claim in his brief to this court that he is indigent. Furthermore, the trial panel chair asked the accused at the hearing whether he had the ability to retain counsel. The accused responded that he was "currently working out an arrangement whereby counsel can be paid." In the course of asking that the hearing be postponed that day, the accused also stated:

> "[I]f I can't come up with the money to retain counsel, to whom I've already spoken about this, who has indicated a willingness to involve himself if the matter will be adjourned, *then quite honestly I will be back and I will ask the panel to appoint* and the panel has that obligation." (Emphasis added.)

In sum, the record does not establish that the accused was indigent.

■     Finally, we address the accused's contention that his due process rights were violated because he did not receive an impartial adjudication because the trial panel erroneously denied his motion to disqualify a panel member. The Bar contends that the accused's motion was untimely under BR 2.4(g).[3]

---

[3] BR 2.4(g) provides, in part:

"The Bar and an accused * * * shall be entitled to one peremptory challenge and an unlimited number of challenges for cause as may arise under the Code of Judicial Conduct or these rules. Any such challenges shall be filed in writing within seven days of written notice of an appointment of a trial panel with the regional chairperson for disciplinary proceedings and the state chairperson * * * for cases involving challenges to a regional chairperson. * * * The Bar and an accused * * * may waive a disqualification of a member in the same manner as in the case of a judge under the Code of Judicial Conduct."

The trial panel hearing ended on November 21, 1996. On May 3, 1997, almost six months later, the accused moved to disqualify a trial panel member on the ground that she slept during some of the testimony and at times "physically and verbally assault[ed] panel members to obtain their concurrence in denying relief sought by the Accused."[4] The trial panel denied the motion in its opinion, concluding that the trial panel member had not engaged in "any inappropriate behavior." Notably, the accused did not object during the hearing when he asserts that he observed the trial panel member sleeping, and he did not object during the hearing when the member allegedly was intimidating the other members into ruling against him.

The Rules of Procedure do not specify a mechanism for dealing with allegedly inappropriate behavior if it occurs during a disciplinary hearing, but it is well established that, in trial proceedings, objections must be made in a timely manner. *See, e.g., State v. Walton*, 311 Or 223, 248, 809 P2d 81 (1991) (motion for mistrial based on objectionable statements or conduct must be made immediately after the statement or conduct). An accused's failure to raise an objection in a timely manner in a disciplinary proceeding is unfair to the Bar and to the trial panel. In this case, if the accused had made timely objections, the trial panel would have had an opportunity to respond to his concerns and correct any improprieties. Because the accused's objections were not timely, we do not consider his argument that he did not receive a fair adjudication. *Cf. State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988) (claim of error must be presented in a timely manner).

We turn to the merits.

---

[4] In its brief to this court, the Bar discusses the additional issue of an alleged *ex parte* contact between the same trial panel member and Bar disciplinary counsel before the hearing in the accused's case. In his reply brief, the accused argues that that *ex parte* contact provides an independent basis for granting his motion to disqualify the trial panel member. Because the alleged contact occurred before the hearing, the accused's motion to disqualify on that basis should have been made before the hearing. The accused contends that it would have been pointless for him to file a challenge before the hearing, because the trial panel member in question was the regional chairperson. However, BR 2.4(g) provides that challenges to a trial panel member who is a regional chairperson are decided by the state chairperson.

## II. MISCONDUCT

The accused is charged with misconduct during three periods of time—a period of administrative suspension, a period of disciplinary suspension, and the period when he sought reinstatement to the Bar after the disciplinary suspension.

### A. *Administrative Suspension*

On April 20, 1993, the Bar suspended the accused from the practice of the law for failure to pay his Professional Liability Fund (PLF) assessment. *See* 9.080(2)(a) (authority to require active Bar members to maintain professional liability insurance). On July 6, 1993, the Bar suspended the accused for failure to pay his Bar dues. Several months later, the accused paid both his PLF assessment and his Bar dues, and he was reinstated effective October 11, 1993. BR 8.4(a).

Although the accused was administratively suspended from the practice of law from April 20 until October 11, 1993, he practiced law during that period of suspension by representing two clients in ongoing litigation. He disclosed to one client, Hallock, that he was suspended, but Hallock wanted the accused to continue to represent him. The accused did not disclose his suspension to his other client, Phillips.

The accused's representation of those two clients during his administrative suspension forms the basis of five of the Bar's causes of complaint. The Bar alleges that the accused violated DR 1-102(A)(3) by failing to disclose his suspension and that he violated DR 3-101(B) by continuing to practice law while suspended. The accused concedes that his conduct violated both of those disciplinary rules. We agree. There is no need to elaborate on each of the matters that formed the basis of the complaint.

### B. *Disciplinary Suspension*

In 1992, the State of Michigan suspended the accused from the practice of law for four months for unethical conduct in three matters. The Oregon State Professional Responsibility Board recommended that this court reciprocally suspend the accused from the practice of law in Oregon

based on his Michigan suspension. *See* BR 3.5 (providing for reciprocal discipline). On July 29, 1993, this court suspended the accused for six months on a reciprocal basis. *In re Devers*, 317 Or 261, 855 P2d 617 (1993). However, the accused's request for reconsideration by this court, which was denied on September 21, 1993, and his motion to the United States Supreme Court to stay the appellate judgment, which was denied on November 23, 1993, delayed the effective date of that suspension. The disciplinary suspension became effective on November 29, 1993. The accused admits that he learned on November 30, 1993, that his disciplinary suspension had become effective. The Bar alleges that the accused practiced law in two matters after November 30, 1993. We consider each matter separately.

## 1. *Stine v. Hallock*

The accused was negotiating a settlement on Hallock's behalf in a foreclosure action when he learned that his disciplinary suspension had gone into effect. He continued to represent Hallock, with Hallock's consent, in the settlement negotiations in that case. He communicated with opposing counsel, reviewed drafts of the settlement agreement, and prepared a draft of that agreement. The accused also signed the final agreement, but crossed out his title, "Attorney for Hallock," thereby giving the first hint to opposing counsel that he was suspended from the practice of law.

The Bar's third cause of complaint contains the allegation that the accused violated DR 1-102(A)(3) and DR 3-101(B) by failing to disclose his disciplinary suspension to opposing counsel and by practicing law during his disciplinary suspension. The accused contends that the Bar failed to prove by clear and convincing evidence that he practiced law after November 30. Although the accused admits that he negotiated the terms of the settlement on Hallock's behalf and that he drafted a settlement agreement in the case, he contends before this court that those activities do not constitute the practice of law. According to the accused, he acted merely as a scrivener when he revised and redrafted the settlement agreement.

This court has held that "any exercise of an intelligent choice, or an informed discretion in advising another of

his legal rights and duties, will bring the activity within the practice of the profession." *State Bar v. Security Escrows, Inc.*, 233 Or 80, 89, 377 P2d 334 (1962); *see also State ex rel Oregon State Bar v. Lenske*, 284 Or 23, 31, 584 P2d 759 (1978) (drafting a contract is the practice of law). The accused's negotiation on Hallock's behalf required legal expertise and informed discretion in order to represent Hallock's interests. Further, drafting the settlement agreement required the accused to make legally informed judgments based on drafts that had been prepared by two other lawyers (one who represented Stine and one who represented a third party) and to exercise informed discretion on Hallock's behalf. For example, in order to protect Hallock's interests, the accused inserted wording into the agreement regarding a claim for labor and materials that Hallock would have against the third party, including reasonable attorney fees in enforcing the claim. That is the work of a lawyer, not a scrivener.

A lawyer has a continuing obligation to comply with all pertinent provisions of the Code of Professional Responsibility, even during a period of suspension. *See In re Coe*, 302 Or 553, 557-59, 731 P2d 1028 (1987) (suspension from the Bar does not terminate the court's jurisdiction over a lawyer's conduct). A lawyer's intentional failure to disclose a suspension to a client violates DR 1-102(A)(3), because it is a misrepresentation of a material fact. *In re Whipple*, 320 Or 476, 487, 886 P2d 7 (1994). Furthermore, a lawyer who fails to disclose a material fact to opposing counsel and fails to correct a known erroneous impression violates DR 1-102(A)(3). *In re Boardman*, 312 Or 452, 456-57, 822 P2d 709 (1991). The accused's suspension from the practice of law was a material fact. His intentional failure to disclose his suspension to opposing counsel during negotiations in the *Stine v. Hallock* matter was a misrepresentation of a material fact under DR 1-102(A)(3), because he failed to correct the erroneous impression that he was qualified to practice law. *See generally In re Martin*, 328 Or 177, 185, 970 P2d 638 (1998) (phrase "conduct involving dishonesty" in DR 1-102(A)(3) "imports with it a notion of knowledge or intentionality").

We find by clear and convincing evidence that the accused violated DR 3-101(B) by practicing law during his disciplinary suspension and that he violated DR 1-102(A)(3)

by not disclosing to opposing counsel that he was suspended from the practice of law.

### 2. *Hallock v. Sass*

When the accused learned of his disciplinary suspension on November 30, 1993, he was representing Hallock in a civil matter involving the construction of a home. The accused remained the lawyer of record in that case until January 6, 1994. In that capacity, at a minimum, he accepted pleadings and discovery requests on Hallock's behalf. On January 6, at the outset of a pretrial conference, the accused informed the court and opposing counsel that he would have to resign from the case because he was suspended from the practice of law.

The Bar's fourth cause of complaint contains the allegation that the accused practiced law in this matter during his disciplinary suspension and that he failed to notify opposing counsel of his disciplinary suspension until January 6, 1994. The accused does not dispute the trial panel's finding that he practiced law in the *Hallock v. Sass* matter, and we accept that finding. The accused violated DR 1-102(A)(3) by not disclosing to opposing counsel between November 30, 1993, and January 6, 1994, the fact of his disciplinary suspension, and he violated DR 3-101(B) by practicing law while suspended during that period.[5]

### C. *Reinstatement Application*

When his disciplinary suspension expired, the accused submitted an application for reinstatement, on which he attested that he had not engaged in the practice of law during the period of his suspension. In its sixth cause of complaint, the Bar alleges that the accused violated DR 1-102(A)(3) by falsely representing on his reinstatement

---

[5] The Bar also asserts that the accused violated DR 1-102(A)(3) in the *Stine v. Hallock* and *Hallock v. Sass* matters by failing to notify the court of his suspension. However, the Bar makes no argument about when or in what manner a lawyer who is suspended from the practice of law must provide such notice. We conclude that this is not an appropriate case for considering and resolving that issue.

application that he had not practiced law during his disciplinary suspension. The accused responds that he did not practice law during his disciplinary suspension or, in the alternative, that he did not knowingly make a misrepresentation on his application for reinstatement because, at the time he signed the reinstatement application, he believed that his conduct in negotiating and drafting the settlement agreement in the *Stine v. Hallock* matter was not the practice of law. The trial panel concluded that the accused was not credible on this point, and this court gives weight to that assessment. *See In re Brown*, 326 Or 582, 598, 956 P2d 188 (1998) (court gives weight to trial panel assessment of credibility).

As discussed above, we find that the accused practiced law during his disciplinary suspension in the *Stine v. Hallock* matter. The accused does not dispute the trial panel's findings with respect to his practicing law in the *Hallock v. Sass* matter during his disciplinary suspension. The accused's testimony regarding his conduct after November 30, 1993, resolves any doubt about this matter:

> "* * * I went ahead and did things on behalf of Mr. Hallock which constitute the practice of law while I was suspended. I have real conflict between my remorse having done that and—I don't want to say pride because that's not the right word. But being able to look in the mirror and realize that I went ahead and helped a client as best I could. Tremendous personal risk, obviously. And I'm not the only one that is going to pay the price for that.
>
> "* * * * *
>
> "I was stupid from an attorney's perspective. Not only was I hanging myself out to dry, I wasn't getting paid for it. * * *"

The record is replete with evidence that the accused practiced law during his disciplinary suspension, knew that he did so, and falsely represented to the contrary on his reinstatement application. We find that the accused violated DR 1-102(A)(3) by claiming on his reinstatement application that he did not practice law during the period of his disciplinary suspension.

## III.  SANCTION

██ ██ The accused committed multiple violations of DR 1-102(A)(3) and multiple violations of DR 3-101(B). In determining the appropriate sanction for that misconduct, we are guided by the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and Oregon case law. *See In re Donovan*, 327 Or 76, 80, 957 P2d 575 (1998) (so holding and illustrating process). The court first considers three factors to determine the appropriate sanction: the duty violated, the accused's mental state, and the actual or potential injury sustained. We then examine any aggravating or mitigating circumstances to determine whether that sanction should be adjusted. *See* ABA Standards 9.2 and 9.3 (describing aggravating and mitigating factors to justify an increase or decrease in the degree of discipline to be imposed). Finally, we look to Oregon case law.

### A.  *Duty Violated*

The accused's conduct in failing to notify those concerned of his administrative and disciplinary suspensions violated his duty of honesty to his clients, to the public, and to the legal profession. ABA Standards 4.0, 5.0, and 7.0. The accused also violated his duty to the public and to the legal profession to refrain from the unauthorized practice of law. ABA Standards 5.0 and 7.0. Finally, the accused violated his duty to follow the terms of prior disciplinary orders. ABA Standard 8.0.

### B.  *Mental State*

ORS 9.160 provides that "no person shall practice law or represent that person as qualified to practice law unless that person is an active member of the Oregon State Bar." The accused, like everyone else, is presumed to know the law. *See Bartz v. State of Oregon*, 314 Or 353, 359-60, 839 P2d 217 (1992) (persons presumed to know legislative enactments relevant to them). As explained earlier, we have rejected the accused's contention that he did not knowingly practice law while suspended. The ABA Standards provide

that an act is intentional if it is done with a conscious objective or purpose to accomplish a particular result. ABA Standards at 17. We conclude that the accused acted intentionally when he held himself out as eligible to practice law when he was not eligible to do so and by not disclosing to all his clients and opposing counsel that he was suspended from the practice of law. *See In re Jones*, 312 Or 611, 617-18, 825 P2d 1365 (1992) (experienced lawyer acted intentionally when engaged in unauthorized practice of law); *see also In re Whipple*, 320 Or at 487 (intentional failure to disclose status to client). We also conclude that the accused intentionally made a misrepresentation on his reinstatement application by declaring that he had not practiced law during his disciplinary suspension.

## C. *Injury Sustained*

Because the purpose of the lawyer discipline process is to protect the public, actual injury is not required; the potential for injury is sufficient. ABA Standards at 25. By intentionally and repeatedly disregarding the disciplinary rules, the accused harmed the legal profession. Moreover, the unauthorized practice of law inherently carries the potential to injure the legal system. *See Whipple*, 320 Or at 488 (so stating); *Jones*, 312 Or at 618-19 (unauthorized practice of law creates potential for injury to public and legal system). Although the trial panel found—and we agree—that the accused's clients were not injured by his misconduct, the potential for injury existed, because between April 30, 1993, and October 11, 1993, the accused was not covered by legal malpractice insurance, the purpose of which is to protect clients from the consequences of professional error.

Although the accused's misconduct implicates several ABA Standards,[6] ABA Standard 8.1 is dispositive. It provides that disbarment is generally appropriate when a lawyer:

---

[6] ABA Standard 4.62 provides:

"Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client."

ABA Standard 5.11(b) provides that disbarment is generally appropriate when:

"(a)   intentionally or knowingly violates the terms of a prior disciplinary order·and such violation causes injury or potential injury to a client, the public, the legal system, or the profession; or

"(b)   has been suspended for the same or similar misconduct and intentionally or knowingly engages in further similar acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."

According to the Commentary to ABA Standard 8.1:

"Disbarment is warranted when a lawyer who has previously been disciplined intentionally or knowingly violates the terms of that order and, as a result, causes injury or potential injury to a client, the public, the legal system, or the profession. *The most common case is one where a lawyer has been suspended but, nevertheless, practices law.* * * *

"*Disbarment is also appropriate when a lawyer intentionally or knowingly engages in the same or similar misconduct.* * * *." ABA Standards at 47 (emphasis added).

Disbarment clearly could be an appropriate sanction in this case. To determine whether that sanction should be imposed, we consider aggravating and mitigating factors.

D.   *Existence of Aggravating or Mitigating Factors*

We find the following aggravating factors. The accused has a prior disciplinary record in Michigan (an admonishment in 1979, orders of reprimand in 1987 and 1988, and a suspension in 1992) and in Oregon. ABA Standard 9.22(a). The accused displayed a pattern of misconduct, manifested by repetition of the same violations. ABA Standard 9.22(c). The accused committed multiple offenses. ABA Standard 9.22(d). The accused refused to acknowledge the wrongful nature of practicing law while suspended by continuing to practice while he was suspended and by disputing

---

"a lawyer engages in * * * intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

ABA Standard 7.2 provides:

"Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system."

that his conduct was the practice of law. ABA Standard 9.22(g). The accused has substantial experience in the practice of law. ABA Standard 9.22(i).

We find the following mitigating factors. The accused suffered from personal problems, which were primarily financial in nature. ABA Standard 9.32(c). After he discharged his lawyer and began to represent himself, which was near the date of the trial panel hearing, the accused cooperated with the disciplinary proceedings. ABA Standard 9.32(e). The trial panel found that the accused has a good reputation. ABA Standard 9.32(g).[7]

E.   *Oregon Case Law*

The Bar relies on *Jones* for its argument that the accused's misconduct warrants disbarment. In that case, although not referring to ABA Standard 8.1, the court held that "[i]ntentionally continuing to practice law in the face of this court's earlier suspension supports disbarment." 312 Or at 619. The court found a number of aggravating factors in *Jones*. One of the "most disconcerting" was Jones's refusal to recognize the wrongfulness of his conduct. *Ibid.* The court found that the mitigating factors—the absence of a dishonest or selfish motive and the presence of physical impairment—were "not sufficiently weighty to reduce the sanction" of disbarment. *Ibid.*

*Jones* is very similar to this case. Like the accused here, the lawyer in *Jones* committed multiple violations of disciplinary rules, including engaging in the unauthorized practice of law after he had been suspended by this court. *Id.* at 613. Like the lawyer in *Jones*, the accused attempts to justify his misconduct by claiming that he was trying to protect the interests of his client, Hallock, by practicing law while suspended. The accused's refusal to recognize the wrongfulness of his misconduct is just as disconcerting here as the same kind of conduct was in *Jones*. Also like the lawyer in

---

[7] The accused argues that an additional mitigating factor is that it took "an unconscionable period of time" for the case to reach hearing. The accused is correct that "delay in disciplinary proceedings" may be a mitigating factor under ABA Standard 9.32(j). However, the record reveals that in this case the accused shares responsibility for the delay.

*Jones*, the accused has substantial experience in the practice of law.

The accused also refuses to recognize the actual injury that he has caused to the legal profession and the potential injury that his misconduct caused to his clients and the public. His disregard for the orders of this court is strong evidence of his pattern of misconduct and his refusal to recognize the wrongful nature of his conduct.

As noted above, in *Jones*, the court concluded that the mitigating factors were not sufficiently weighty to reduce the sanction of disbarment. The same is true here. Like the lawyer in *Jones*, the accused here suffered from personal problems, albeit financial rather than physical. The trial panel found that the accused was motivated by what he felt to be the best interests of his clients, just as the lawyer in *Jones* did not act out of a dishonest or selfish motive. Although the accused in this case eventually cooperated with the Bar, he did so only after he began to represent himself, which was less than a week before the hearing. The additional mitigating factor in this case—the accused's good reputation—is not itself sufficient to reduce the sanction of disbarment. We conclude that the facts of this case require disbarring the accused from the practice of law.[8]

The accused is disbarred, commencing 60 days from the date of filing of this decision.

---

[8] Because the formal complaint in this case was filed in 1994, the accused may apply for reinstatement five years after the effective date of this decision. BR 6.1(e).