Submitted on the record April 14, accused suspended from the practice of law for one year July 21, 2000

# In re Complaint as to the Conduct of

# LeANNE L. KOLIHA,
*Accused.*

(OSB 96-179; SC S45209)

9 P3d 102

Martha M. Hicks, Assistant Disciplinary Counsel, Lake Oswego, for the Oregon State Bar.

No appearance *contra*.

PER CURIAM

## PER CURIAM

The Oregon State Bar (Bar) charged the accused by formal complaint with violating ORS 9.160 (engaging in the unlawful practice of law),[1] Code of Professional Responsibility Disciplinary Rule (DR) 1-102(A)(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation),[2] DR 1-102(A)(4) (engaging in conduct prejudicial to the administration of justice),[3] DR 3-101(B) (engaging in the unlawful practice of law),[4] and DR 1-103(C) (failing to cooperate during disciplinary investigation).[5] The accused was

---

[1] ORS 9.160 provides:

"Except for the right reserved to litigants by ORS 9.320 to prosecute or defend a cause in person, no person shall practice law or represent that person as qualified to practice law unless that person is an active member of the Oregon State Bar."

[2] DR 1-102(A)(3) provides, in part:

"It is professional misconduct for a lawyer to:

"* * * * *

"Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[3] DR 1-102(A)(4) provides, in part:

"It is professional misconduct for a lawyer to:

"* * * * *

"Engage in conduct that is prejudicial to the administration of justice[.]"

[4] DR 3-101(B) provides:

"A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction."

The Bar pleaded, and the trial court found, that the accused violated DR 3-101(*A*), which prohibits aiding a nonlawyer in the unlawful practice of law. The reference to that Disciplinary Rule appears to have been a typographical error. There are no facts alleged in the complaint that would support a violation of DR 3-101(*A*). Moreover, in its memorandum to the trial panel concerning sanctions, the Bar distinguished the misconduct of the accused—practicing law while suspended—from the misconduct in *In re Jones*, 308 Or 306, 779 P2d 1016 (1989) (lawyer allowed nonlawyer to practice law using his name). In light of the foregoing, we conclude that the Bar intended to plead that the accused violated DR 3-101(*B*). We proceed accordingly.

[5] DR 1-103(C) provides:

"A lawyer who is the subject of a disciplinary investigation shall respond fully and truthfully to inquiries from and comply with reasonable requests of a tribunal or other authority empowered to investigate or act upon the conduct of lawyers, subject only to the exercise of any applicable right or privilege."

served personally with a copy of the complaint and notice to answer. She failed to file an answer or to make any appearance throughout these proceedings.[6]

A trial panel of the Disciplinary Board entered an order finding the accused in default. Bar Rule of Procedure (BR) 5.8(a).[7] Thereafter, the trial panel deemed the allegations in the formal complaint to be true and held a hearing solely on the issue of sanction. The trial panel suspended the accused from the practice of law for one year.

ORS 9.536(2) requires this court to review the trial panel's decision. *See also* BR 10.1 (same). We review *de novo*. ORS 9.536(3); BR 10.6. The accused did not file a brief or make any appearance in this court. We granted the Bar's motion to submit the matter on the record without oral argument. ORAP 11.25(3)(b). For purposes of review, because the accused defaulted, we deem the allegations contained in the Bar's complaint to be true. *In re Crist*, 327 Or 609, 612, 965 P2d 1023 (1998).

The Bar's formal complaint against the accused alleged, in part:

"3.

"On or about July 6, 1993, the Accused was suspended from the practice of law in the State of Oregon and was, at all relevant times herein, not an active member of the Oregon State Bar.

---

[6] Instead of filing an answer to the formal complaint, the accused returned the notice to answer and executed the sample Form B resignation attached to it. The Bar submitted the accused's resignation to this court for consideration. Bar Rule of Procedure (BR) 9.2. We declined to accept the accused's resignation, because it did not comply with BR 12.7.

[7] BR 5.8(a) provides, in part:

"If an accused lawyer fails to resign or file an answer to a formal complaint within the time allowed by these rules, or if an accused lawyer fails to appear at a hearing set pursuant to BR 2.4(h), the trial panel may enter an order in the record finding the accused in default under this rule. The trial panel may thereafter deem the allegations in the formal complaint to be true. The trial panel shall thereafter proceed to render its written opinion based on the formal complaint, or at the discretion of the trial panel, after considering evidence or legal authority limited to the issue of sanction. * * *"

"4.

"Prior to June, 1995, the Accused undertook to represent Allen Mackey (hereinafter referred to as "Mackey") in a conservatorship/guardianship proceeding pending in Grant County, Oregon. During this representation, the Accused rendered legal advice to Mackey.

"5.

"On or about June 6, 1995, the Accused drafted a Petition to Block Accounts on her pleading paper for Mackey's signature. On or about June 6, 1995, the Accused corresponded with opposing counsel on Mackey's behalf and filed the Petition to Block Accounts with the Oregon Circuit Court in Grant County.

"6.

"On October 17, 1995, the Accused appeared on Mackey's behalf at a telephone hearing in Case No. 94-11324PR, Circuit Court, State of Oregon, County of Grant. In so appearing the Accused held herself out to the court as an active member of the Oregon State Bar and eligible to practice law in this state when she was not.

"* * * * *

"10.

"On June 7, 1996, the Oregon State Bar received a complaint concerning the Accused's conduct. On June 14, 1996 and July 26, 1996, the Disciplinary Counsel's Office forwarded a copy of the complaint to the Accused and requested her response to it. The Accused responded on September 13, 1996.

"11.

"On September 20, 1996, October 4, 1996, and October 18, 1996, the Disciplinary Counsel's Office requested the Accused's response to specific questions with regard to her conduct. The Accused made no response.

"12.

"On June 25, 1997 and July 29, 1997, a member of the Baker/Grant [C]ounty Local Professional Responsibility Committee (LPRC) contacted the Accused by mail and by

telephone and requested her response to the complaint. The Accused made no response.

"13.

"While the subject of a disciplinary investigation, the Accused failed to cooperate with the Disciplinary Counsel's Office and with LPRC which are empowered to investigate or act upon the conduct of lawyers."

On the basis of the Bar's formal complaint and the accused's default, we agree with the trial panel that the accused violated ORS 9.160, DR 1-102(A)(3), DR 1-102(A)(4), and (as corrected) DR 3-101(B), by representing a client in an Oregon circuit court proceeding while not an active member of the Oregon State Bar. We also agree with the trial panel that the accused violated DR 1-103(C), by failing to cooperate with the Bar's inquiries regarding her misconduct.

We next determine the appropriate sanction. This court refers to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) for guidance in determining the appropriate sanction. *In re Howser*, 329 Or 404, 412, 987 P2d 496 (1999). Under the ABA Standards, the court uses three factors to make an initial determination of the appropriate sanction: (1) the duty violated; (2) the accused's mental state; and (3) the actual or potential injury caused by the accused's misconduct. ABA Standard 3.0. The court then considers any aggravating or mitigating circumstances that are present to determine whether that initial determination should be adjusted. *In re Devers*, 328 Or 230, 241, 974 P2d 191 (1999); ABA Standard 3.0. Finally, the court also considers the conduct of the accused in light of prior case law. *In re Huffman*, 328 Or 567, 588, 983 P2d 534 (1999).

We first consider the duties that the accused violated. By practicing law during a period of suspension, the accused violated her duty to the public and as a professional to refrain from the unauthorized practice of law. ABA Standards 5.0 and 7.0. She also violated her duty to the court by failing to disclose that she was suspended from the practice of law. ABA Standard 6.0. Finally, she violated her duty as a professional by failing to respond to inquiries from both the

Disciplinary Counsel's Office and the Local Professional Responsibility Committee (LPRC). ABA Standard 7.0.

We turn next to the mental state of the accused. The ABA Standards provide that a lawyer acts with "intent" if he or she has a "conscious objective or purpose to accomplish a particular result." ABA Standards at 17. A lawyer acts with "knowledge" if he or she has a "conscious awareness of the nature or attendant circumstances of the conduct," but does not have a "conscious objective or purpose to accomplish a particular result." *Id.*

The accused is presumed to know that the law requires a person who practices law in Oregon to be an active member of the Oregon State Bar. *Devers*, 328 Or at 241. In this matter, the accused's representation of Mackey took place more than two years after she had been suspended from the practice of law in Oregon for failure to pay her Bar dues. We conclude, from those facts, that the accused acted intentionally, *i.e.*, that she acted with a conscious objective or purpose to accomplish a particular result, by holding herself out as eligible to practice law when she was not eligible to do so and by failing to disclose to the court that she was suspended from the practice of law. *See id.* at 241-42 (lawyer acted intentionally when he engaged in unauthorized practice of law).

For the following reasons, we also conclude that the accused knowingly failed to cooperate with the Bar's investigation. The record indicates that the accused signed a return receipt for a letter from the Bar notifying her of the allegations and requesting a response from her to those allegations.[8] Additionally, the record also shows that the Bar personally served the accused with a copy of the complaint and that the accused returned the notice to answer with a signed Form B resignation form attached. Based on those facts, we conclude that the accused acted "knowingly" when she failed to respond to the Bar's inquiries, that is, with a "conscious awareness of the nature or attendant circumstances of her

---

[8] The record also suggests that the accused responded to the complaint in a letter dated September 13, 1996. The Bar did not include the accused's letter as part of the record in this proceeding. In a subsequent letter, the Bar acknowledged the accused's response and requested additional information. The accused, however, did not respond to that, or any other, additional inquiry by the Bar or the LPRC.

conduct, but without a conscious objective or purpose to accomplish a particular result." *See In re Miles*, 324 Or 218, 221-22, 923 P2d 1219 (1996) (finding same mental state in similar circumstances).

As to the injury caused by the accused's misconduct, we note that "injury" includes actual or potential harm to a client, the public, the legal system, or the legal profession. ABA Standards at 6-7. Although the Bar does not allege that the accused's client suffered actual harm as a result of her unlawful practice of law, the Bar correctly asserts that the unauthorized practice of law inherently carries with it the potential to injure the legal system. *See In re Whipple*, 320 Or 476, 488, 886 P2d 7 (1994) (so stating). We also agree that the accused's failure to cooperate with the Bar's investigation caused actual harm to both the legal profession and the public, because it delayed the investigation and, consequently, the resolution of the complaint against her. *See Miles*, 324 Or at 222 (so concluding in similar circumstances).

The accused's misconduct implicates several ABA Standards. ABA Standard 5.11 provides, in part:

> "Disbarment is generally appropriate when:
>
> "* * * * *
>
> "(b) a lawyer engages in * * * intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

ABA Standard 6.12 provides:

> "Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

ABA Standard 7.1 provides:

> "Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for

> the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system."

ABA Standard 7.2 provides:

> "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system."

Based on the foregoing, we make an initial determination that either disbarment or a suspension would be appropriate in this case. We now consider the applicable aggravating and mitigating circumstances that might affect our determination of the appropriate sanction.

We find only one aggravating factor: The accused's misconduct involved multiple offenses. ABA Standard 9.22(d). The sole mitigating factor is that the accused has no prior disciplinary record. ABA Standard 9.32(a).

The remaining consideration is this court's case law. Although we find no cases directly on point, the following are instructive. In *Devers*, 320 Or at 245, this court disbarred a lawyer, who had a disciplinary record, for continuing to practice law after he had been suspended. Similarly, the court disbarred the lawyer in *In re Jones*, 312 Or 611, 825 P2d 1365 (1992), who also had a previous disciplinary record, for, among other things, practicing law while suspended and failing to respond to the Bar's inquiries. Unlike the lawyers in *Devers* and *Jones*, however, the accused does not have a prior disciplinary record. Her unauthorized practice occurred while she was suspended for failure to pay her Bar dues, not for a previous disciplinary violation. Additionally, because the conduct in *Devers* and in *Jones* was more egregious than the accused's conduct here, we do not think that a similar sanction is appropriate in this case.

The Bar suggests, and the trial panel concluded, that a one-year suspension is appropriate here. The Bar directs our attention to *In re Jones*, 308 Or 306, 779 P2d 1016 (1989), in which the court suspended the accused lawyer for six months for violating DR 1-102(A)(1) (knowingly assisting another to violate disciplinary rules), DR 1-102(A)(4) (conduct prejudicial to administration of justice) and DR 3-101(A)

(aiding nonlawyer in unlawful practice of law). The Bar acknowledges that the misconduct in *Jones* differs from the misconduct in this case but argues that *Jones* is instructive because it demonstrates that a six-month suspension is an appropriate sanction for the accused's unlawful practice of law. However, because the accused engaged in additional misconduct—failure to cooperate with the Bar's disciplinary investigation—the Bar recommends a one-year suspension. *See, e.g.*, *Miles*, 324 Or at 224 (120-day suspension appropriate when lawyer failed to respond to inquiries posed by Bar and LPRC in disciplinary investigation).

Drawing together the factors of the duty violated, the mental state of the accused, the injury caused, and the aggravating and mitigating factors, in addition to our consideration of this court's prior case law, we conclude that a one-year suspension is the appropriate sanction for the accused's misconduct—engaging in the unauthorized practice of law while suspended for failure to pay her Bar dues, engaging in conduct involving dishonesty and misrepresentation, engaging in conduct prejudicial to the administration of justice, and failure to cooperate with the Bar's investigation of that misconduct.[9]

The accused is suspended from the practice of law for a period of one year, commencing 60 days from the date of the filing of this decision.

---

[9] If the accused desires to be reinstated as an active member of the Bar, then she must submit a formal application. *See* BR 8.1(a)(iv) and (viii) (formal application required for reinstatement of member of Bar who has been suspended for misconduct for period of more than six months and/or for member of Bar who has been suspended for failure to pay membership fees and has remained in that status more than five years).