Argued and submitted March 15, accused disbarred July 11, 2002

In re Complaint as to the Conduct of

# DAVID B. HARRIS,
*Accused.*

(OSB 99-37, 99-62 to 99-64,
99-114 to 99-117; SC S46572)

49 P3d 778

David B. Harris, Portland, argued the cause and filed briefs *in propria persona*.

W. Eugene Hallman, Hallman & Dretke, Pendleton, also argued the cause and filed briefs for the accused.

Steven W. Seymour, Samuels Yoelin Kantor Seymour & Spinrad LLP, Portland, argued the cause for the Oregon State Bar. With him on the brief was Jane E. Angus, Assistant Disciplinary Counsel, Lake Oswego.

PER CURIAM

## PER CURIAM

In this lawyer disciplinary proceeding, we address the question left open in *In re Devers*, 328 Or 230, 233-34, 974 P2d 191 (1999), whether a lawyer has a constitutional right to appointed counsel in a disciplinary proceeding. We conclude that an accused lawyer has no such constitutional right, and, further, we decline to require the appointment of counsel under our general authority over lawyer disciplinary matters. Also, we agree with the decision of the trial panel of the Disciplinary Board to disbar the accused.

We begin with a review of the proceedings below and in this court. In eight separate cases, which were consolidated for proceedings before the trial panel, the Oregon State Bar (Bar) brought 17 causes of complaint alleging a total of 32 violations of nine different disciplinary rules and ORS 9.527(4) (willful deceit or misconduct in legal profession) by the accused. A full recitation of the facts and violations that the Bar alleged is unnecessary. They include multiple instances of failure to complete work on behalf of clients; repeated misrepresentations to judges, one of which resulted in a conviction for criminal contempt of court; misrepresentations to the State Court Administrator in connection with a fee request in a court-appointed criminal matter; filing a false police report; violation of probation conditions, including use of illegal drugs; failure to cooperate with the Bar's investigation; and practicing law when the accused had been suspended.

The Bar filed its first formal complaint against the accused on June 21, 1999, and the accused accepted service of the complaint on July 3, 1999.[1] In the proceedings before the trial panel, the accused missed multiple deadlines for filing pleadings and responding to discovery requests and failed to attend various hearings and depositions. On two occasions, the trial panel issued orders of default because of the

---

[1] The Bar also filed a petition for suspension during pendency of disciplinary proceedings under Bar Rule of Procedure (BR) 3.1, and this court entered an order of suspension on July 1, 1999. Although BR 3.1(h) limits a suspension order under the rule to 270 days, the court also suspended the accused for failure to pay Bar dues, failure to pay Professional Liability Fund assessments, and failure to comply with MCLE requirements, and has not reinstated him.

accused's failure to comply with procedural rules, and the trial panel later set aside each default order based on a motion by the accused. After the accused again failed to produce documents that the Bar had requested and failed to appear for his deposition, the Bar moved for sanctions. As a sanction, the trial panel struck the accused's answer and deemed the allegations in the Bar's amended complaint to be true, as it was authorized to do under Bar Rules of Procedure (BR) 4.5(e) and 5.8(a).

The trial panel set an April 5, 2000, date for a hearing on the sanction to be imposed on the accused for the violations alleged in the amended complaint and held the hearing on that date. The accused did not appear at the hearing or communicate with the Bar or the trial panel before the hearing. The trial panel took the matter under advisement. On July 19, 2000, the accused filed a motion asking the trial panel to set aside the order of default (the sanction order), to appoint counsel to represent the accused, and to reset trial and discovery dates. After receiving the accused's motion, the Bar gave notice of the accused's deposition for July 25, 2000. The accused again did not appear. On August 3, 2000, the trial panel denied the accused's motions. On October 31, 2000, the trial panel issued an opinion concluding that the accused had committed 32 violations of the disciplinary rules and ORS 9.527. The trial panel decided to disbar the accused.

Our review of the decision of the trial panel is automatic, ORS 9.536(2); BR 10.1 (each providing for automatic review of lawyer suspensions exceeding six months), and *de novo*, ORS 9.536(3); BR 10.6. The Bar contends that we should accept the trial panel's findings of fact and conclusions of law, and disbar the accused. The accused seeks review of the trial panel's decision, pursuant to BR 10.5, and argues that we should impose a suspension of three years.

In addition to seeking review of the trial panel's decision, the accused moved this court for permission to brief and argue the issue whether the Bar should have appointed counsel to represent him before the trial panel, and we granted that motion. The accused filed a brief and a reply brief *pro se* that accepted some of the trial panel's findings of fact,

objected to other findings, and asserted a number of mitigating factors that, according to the accused, the trial panel should have considered in its decision regarding sanctions. Attached to the accused's *pro se* brief were affidavits and other materials that were not part of the record before the trial panel. Counsel for the accused filed a separate brief, including an affidavit and other material not part of the record, and a reply brief, both of which dealt with the issue of appointment of counsel.[2]

The Bar moved to strike portions of the accused's *pro se* brief and *pro se* reply brief, and of the brief that counsel had filed for the accused, on the grounds that they included or referred to material not found in the record and otherwise failed to comply with applicable procedural rules. Those portions of the briefs primarily related to drug addiction generally and to the accused's addiction in particular. The *pro se* briefs and the brief that counsel filed for the accused relied on that information to support the accused's claim that the trial panel should have appointed counsel to represent him because his addiction had rendered him unable to participate in the proceedings against him. In the *pro se* briefs, the accused also used the proffered material regarding addiction to support his argument that mitigating factors were present that the trial panel should have considered in deciding on a sanction. The Bar also moved to strike portions of the *pro se* briefs that did not relate to the accused's drug addiction, but responded on the merits to the Bar's allegations of violations of the disciplinary rules by asserting facts outside the record before the trial panel. Because we review lawyer disciplinary matters on the record that was before the trial panel, BR 10.6, and because the accused had ample opportunity to present the material contained in the briefs to the trial panel but failed to do so in a timely manner, we allowed the Bar's motion to strike.

We begin with the accused's claim that the trial panel should have appointed counsel to represent him. In

---

[2] Counsel for the accused requested as relief a remand to the trial panel to consider the request for appointment of counsel, rather than the three-year suspension requested in the accused's *pro se* brief. Because of our disposition of this proceeding, we need not consider the relevance, if any, of the variation between the relief requested in the briefs.

*Devers,* an accused lawyer asserted that his due process rights were violated when a trial panel denied his motion for appointed counsel. 328 Or at 233. This court declined to reach the merits of that claim, because only an indigent accused would have a right to appointed counsel, if such a right existed. The accused lawyer had presented no evidence of indigence to the trial panel and had not claimed that he was indigent in his brief to this court. *Id.* at 234. Here, the accused submitted an affidavit to the trial panel that identified his limited assets and asserted that he was indigent. The accused continued to assert his indigence in his brief in this court and noted that, at approximately the same time as the proceedings before the trial panel, he was found to be indigent for purposes of a criminal proceeding against him. We conclude that the accused has demonstrated indigence sufficient for him to raise before this court the issue whether the trial panel should have appointed counsel to represent him in the disciplinary proceeding. We now turn to the merits of that claim.

The accused first argues that he has a constitutional right to court-appointed counsel under Article I, section 11, of the Oregon Constitution, which provides, in part, that "[i]n all *criminal prosecutions,* the accused shall have the right * * * to be heard by himself and counsel * * *." (Emphasis added.) This court has held that Article I, section 11, "mandates the appointment of counsel for all indigent defendants whose conviction may result in a loss of liberty." *Stevenson v. Holzman,* 254 Or 94, 104, 458 P2d 414 (1969). Further, in *Brown v. Multnomah County Dist. Ct.,* 280 Or 95, 570 P2d 52 (1977), this court focused on the words of the constitutional provision and held that, if a proceeding properly could be characterized as a "criminal prosecution," the subject of the proceeding was entitled to constitutional protections, including the right to counsel, even if imprisonment was not a possible sanction. *Id.* at 102-08.

In *Brown,* this court examined the first-time offense of driving under the influence of intoxicants (DUII), which the legislature, as part of an effort to "decriminalize" certain traffic violations, had designated as a "traffic infraction" rather than a "traffic crime," thereby eliminating the possibility of any imprisonment for the offense. 280 Or at 97. To

determine whether a civil penalty proceeding, like the newly decriminalized DUII offense, nonetheless remained a "criminal prosecution" for constitutional purposes, this court examined certain "indicia" and noted that "[a]ll [of the indicia] are relevant, but none is conclusive" in reaching the "ultimate determination." *Id.* at 102. The indicia are: (1) the type of offense; (2) the penalty incurred; (3) collateral consequences; (4) punitive significance; and (5) the role, if any, of arrest and detention. Based on those indicia, this court concluded in *Brown* that the "decriminalization" of a first offense of DUII "did not free [that] offense from the punitive traits that characterize a criminal prosecution." *Id.* at 110. Accordingly, the court held that one charged with that offense is entitled to constitutional protections, including the right to counsel, that inure to those charged with more serious traffic crimes for which imprisonment is a possible penalty. *Id.* at 110-11.

The accused argues that, except for the possibility of "arrest and detention" in connection with the offense, each of the other four indicia discussed in *Brown* points to the conclusion that a lawyer disciplinary proceeding—at least one in which disbarment is a possible sanction—is a "criminal prosecution" for purposes of Article I, section 11. We disagree.

At the outset, we take note of ORS 9.529:

> "Bar proceedings relating to discipline, admission and reinstatement are neither civil nor criminal in nature. They are sui generis and within the inherent power of the Supreme Court to control. * * *"

Although we agree with the accused that the mere labeling of lawyer disciplinary proceedings as "sui generis" and not "criminal in nature" is not dispositive of whether they might constitute "criminal prosecutions" under Article I, section 11, *see Brown*, 280 Or at 102, the legislature's statement in that regard is relevant to our analysis. ORS 9.529 identifies lawyer disciplinary proceedings as matters within this court's regulatory authority over those who practice in the Oregon courts, rather than as part of the criminal law process. ORS 9.529 is part of a statutory scheme under which the court may discipline a lawyer determined to have violated applicable rules. *See* ORS 9.536 (authorizing sanctions). Moreover, this court has stated that

> "[p]roceedings for the discipline of an attorney are not to punish the attorney for the commission of a crime. That matter is left to the criminal courts."

*In re Carstens*, 297 Or 155, 166, 683 P2d 992 (1984). Instead, this court has stated that the purpose of lawyer disciplinary proceedings is to " 'protect the public and the administration of justice from lawyers who have not discharged * * * their professional duties to clients, the public, the legal system, and the legal profession.' " *In re Smith,* 315 Or 260, 266, 843 P2d 449 (1992) (quoting American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986), Standard 1.1). That purpose overlaps, but is not coextensive with, the principles underlying the criminal law, which the Oregon Constitution identifies as the "protection of society, personal responsibility, accountability for one's actions and reformation." Or Const, Art I, § 15. The aspects of lawyer disciplinary proceedings described above are relevant to several of the *Brown* factors and support the conclusion we reach below that those proceedings are not "criminal prosecutions." We now turn to the indicia identified in *Brown*.

■ In determining "whether an ostensibly civil penalty proceeding remain[ed] a 'criminal prosecution' for constitutional purposes," the *Brown* court first considered the "type of offense." 280 Or at 102. Significantly, *Brown* itself found that factor unhelpful in determining whether a first-time DUII was "criminal" in nature, and the court agreed that the legislature could "decriminalize" offenses that traditionally were considered crimes, including DUII. *Id.* at 102-03. Here, the accused points to the Bar's causes of complaint that are based upon traditional criminal conduct and suggests that disciplinary proceedings based upon that conduct are in the nature of criminal prosecutions.

■ The accused misses the point. Certainly, the possession of illegal drugs, filing of a false police report, and other acts that are the basis for certain of the Bar's causes of complaint constitute crimes that could be, and in some instances have been, the subject of "criminal prosecutions" against the accused. To the extent that the accused is prosecuted for those crimes, he is entitled to receive all the protections that Article I, section 11, affords. A Bar proceeding based on that

conduct, however, is not a substitute for what otherwise would be a criminal prosecution. Rather, it is a separate proceeding that the Bar might bring against an accused lawyer whether or not the lawyer is prosecuted criminally and, in fact, might bring even if the lawyer were acquitted of the criminal charges. *See In re Kimmell*, 332 Or 480, 485, 31 P3d 414 (2001) (disciplinary rule violation may be based on conduct that constitutes a criminal act, but does not require criminal conviction). The Bar proceeding is not an indirect means of prosecuting the accused for criminal conduct without affording him the constitutional rights given to others who may be criminally prosecuted for the same conduct. The Bar bases some of its causes of complaint in this proceeding on actions that also constitute crimes, but the "type of offense" involved in each cause of complaint is a violation of disciplinary rules or ORS chapter 9.

The second factor identified in *Brown* is the nature of the penalty. 280 Or at 103. There, the court noted that, although the possibility of imprisonment was "generally regarded as the single most important criterion" for determining whether a proceeding is a criminal prosecution, "the absence of potential imprisonment does not conclusively prove a punishment noncriminal." *Id.* This court stated that the assessment of whether a punishment is non-criminal "has been made on two factors—the severity of the penalty and whether it is 'infamous.'" *Id.* The accused argues that the potential penalties in a lawyer disciplinary proceeding are both severe and "infamous." He asserts that, if the court assesses costs against him, they likely will exceed the $500 to $1,000 fines for first-time DUII offenders that the *Brown* court found to be of "punitive significance." He also claims that "disbarment for any reason is without question 'infamous.'"

*Brown* does not support the accused's position. First, the civil penalties at issue in *Brown* were fines for violating the Oregon Vehicle Code, and the only question was the level at which a court should consider those fines to be "criminal," rather than civil, for constitutional purposes. In contrast, the potential assessment of costs against an accused lawyer in a disciplinary proceeding is not a penalty assessed to punish the lawyer for past violations or to deter future violations.

The award of costs to the prevailing party, either by the trial panel or this court, *see* BR 10.7 (authorizing award of costs), is simply an aspect of the disciplinary proceeding process, similar to the practice of awarding costs to a prevailing party in civil litigation, *see* ORCP 68 B (providing for award of costs and disbursements to prevailing party). The amount of the costs awarded will vary, but the imposition of those costs connotes only that a party did not prevail and is of no "punitive significance" whatsoever.

Second, the accused misconstrues the word "infamous" as used by the *Brown* court. In that case, the court explicitly stated that the identification of a punishment as "infamous" related to the *"significance* attached to imprisonment * * *, even for a short term." 280 Or at 103-04 (emphasis in original). Imprisonment is not a potential penalty in a lawyer disciplinary proceeding. The accused asserts, however, that disbarment is inherently infamous and, in addition, that its infamous nature is evidenced by ORS 113.095, which prohibits a disbarred lawyer from acting as a personal representative. The degree to which disbarment is or is not infamous may be subject to debate, but the accused cites no case and makes no argument to support his assertion that a sanction short of imprisonment carries such infamy that Article I, section 11, requires the same protections provided for criminal prosecutions.

The next factor that the *Brown* court identified as relevant to determining whether constitutional protections apply to a particular proceeding is the possibility of collateral consequences. 280 Or at 105. In *Brown*, this court held that suspension or revocation of a driver license was *not* an example of collateral consequences of committing a traffic offense. *Id.* The accused asserts, without elaboration, that the loss of a professional license is a serious collateral consequence that is "substantially different" from the loss of a license to operate a motor vehicle. However, the personal and professional consequences of disbarment are simply the direct results of regulatory action taken by the court and do not impose a collateral punishment of a criminal nature. *See id.* (distinguishing between license revocation that is "regulatory" and that which is "another form of punishment").

Finally, we consider the relevance of *Brown*'s final factor—"punitive significance"—to disbarment. 280 Or at 105-07. The accused argues that disbarment for criminal conduct carries at least as great a "stigma of condemnation" as a criminal conviction. The "punitive significance" of disbarment is such that, according to the accused, the ostensibly nonpenal sanction nevertheless is sufficient to invoke the constitutional standards for a criminal prosecution, including the right to counsel protected by Article I, section 11. We agree that disbarment carries a stigma, particularly within the legal profession, but we note that that stigma is an unavoidable consequence of the means by which this court is able to protect the public from harm and preserve the integrity of the judicial system.

We have examined the indicia described in *Brown*, and we conclude that they do not support the accused's assertion that a lawyer disciplinary proceeding in which disbarment is a possible sanction is a "criminal prosecution" for the purposes of Article I, section 11. In the absence of the other factors that the *Brown* court identified as relevant, the stigma and possible infamy of disbarment are not sufficient grounds upon which to characterize a lawyer disciplinary proceeding as a criminal proceeding that requires constitutional protections. Accordingly, Article I, section 11, does not require the appointment of counsel for an accused lawyer in a disciplinary proceeding.

■      The accused next argues that the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires that a trial panel appoint counsel for an indigent lawyer in a bar disciplinary proceeding. In criminal proceedings, the United States Supreme Court has determined that the Due Process Clause makes applicable to state prosecutions the right to counsel contained in the Sixth Amendment to the United States Constitution. *Alabama v. Shelton*, 535 US 654, 122 S Ct 1764, 1769, 152 L Ed 2d 888 (2002) (so stating). The Sixth Amendment, however, like Article I, section 11, of the Oregon Constitution, applies by its terms only to "criminal prosecutions," and the accused cites no case in which a court has held that a lawyer disciplinary proceeding is a criminal prosecution for Sixth Amendment right-to-counsel purposes.

■      Citing *Lassiter v. Department of Social Services*, 452 US 18, 33, 101 S Ct 2153, 68 L Ed 2d 640 (1981), however, the accused asserts that we should interpret the Due Process Clause to require the right to counsel here because the Fourteenth Amendment "imposes on the States the standards necessary to ensure that judicial proceedings are fundamentally fair." Even if we agree, for purposes of argument, that lawyer disciplinary proceedings are "judicial proceedings" and that "fundamental fairness" is required, we do not believe the Due Process Clause requires the appointment of counsel for an indigent lawyer accused of violating Bar disciplinary rules. In *Lassiter*, the Supreme Court agreed that due process might require the appointment of counsel in some noncriminal proceedings, but stated that there was a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." 452 US at 26-27. A lawyer disciplinary proceeding, of course, poses no risk of a loss of physical liberty to the accused lawyer. The accused advances no other argument that would justify, in this context, a departure from the presumption that *Lassiter* discussed. Moreover, many cases have considered—and rejected—the argument that due process requires the appointment of counsel for an indigent lawyer in a disciplinary proceeding. *See, e.g.*, Annot., *Appointment of Counsel for Attorney Facing Disciplinary Charges*, 86 ALR 4th 1071 (1991) (collecting cases).

Even if no state or federal constitutional provision requires the appointment of counsel, the accused argues, this court should exercise its inherent authority to appoint counsel to ensure fair lawyer disciplinary proceedings. The accused points to the significant personal interest that the accused lawyer has in such a proceeding, the risk that a trial panel may reach an erroneous decision if an accused party is unrepresented, and the interest of the state and the public in fairly adjudicated disciplinary proceedings. The accused argues that those considerations support the appointment of counsel, even if due process does not require such appointment. The accused points out that Oregon law requires appointed counsel in other adversarial settings, such as juvenile cases, ORS 419B.195, termination of parental rights cases, ORS 419B.518, and mental commitment hearings,

ORS 426.100. He also invites this court to follow the practice of certain other states where counsel is appointed for lawyers in some disciplinary proceedings.

We decline the invitation. The routine appointment of counsel in lawyer disciplinary matters might or might not be a better policy than that contained in the current procedures.[3] Those procedures, however, are based upon rules that the Bar's Board of Governors has adopted and that this court has approved. If those rules are to be changed in the manner that the accused advocates, that change "must await the full debate that is contemplated by the process for adopting and amending" them. *In re Gatti,* 330 Or 517, 532, 8 P3d 966 (2000).

We return to the merits of this case. As noted above, the accused failed, on multiple occasions, to respond to the Bar's complaint. The Bar's efforts to communicate with the accused and to serve him with applicable papers and notices met the requirements of due process. On two occasions, the trial panel set aside default orders and gave the accused additional time to respond to discovery requests and to the charges against him. When the accused again failed to comply with orders from the trial panel, that panel, in an order signed March 31, 2000, struck the accused's answer and deemed the allegations in the formal complaint to be true. BR 4.5(e); BR 5.8(a). The accused moved to set aside that order, but again failed to comply with discovery requirements.

On August 3, 2000, the trial panel issued findings and an order that, among other things, denied the accused's motions to set aside the sanction order, to appoint counsel, and to reset discovery and trial dates. On October 31, 2000, the trial panel issued its opinion on the merits, concluding that the accused had committed 32 violations of the disciplinary rules and ORS 9.527, and disbarring the accused.

---

[3] We note that BR 3.2 already permits a court to appoint counsel for a lawyer facing a disciplinary proceeding in those exceptional cases in which the accused lawyer suffers from a personality disorder, mental illness, senility, or addiction. Although the accused allegedly did suffer from addiction, he did not indicate that he was addicted during the disbarment proceedings, he did not petition for appointed counsel under that rule, and he participated—albeit intermittently—in the proceedings against him. In any event, the rule is permissive, rather than mandatory.

■    On *de novo* review, and for the reasons discussed above, we agree with the trial panel's denial of the accused's request that counsel be appointed to represent him. We also agree with the trial panel's order denying the accused's motion to set aside the default (sanction) order. Because the trial panel properly struck the accused's answer, the trial panel correctly deemed the allegations in the Bar's complaint to be true. Based on those allegations, the record as a whole, and the opinion of the trial panel, we agree with the trial panel that the accused committed the violations charged and that he should be disbarred.[4]

The accused is disbarred, effective 60 days from the date of filing of this decision.

---

[4] The accused's repeated violations of the disciplinary rules are sufficient to warrant disbarment. In arriving at that conclusion, we do not consider the effect or relevance of the trial panel's conclusion that the accused also violated ORS 9.527(4). *See In re Kimmel*, 332 Or 480, 487, 31 P3d 426 (2001) (violation of provision of ORS chapter 9 generally has no effect on sanction that this court imposes for violations of disciplinary rules).