Argued and submitted September 6, accused suspended from practice of law for period of four months, with period of suspension to run consecutively to period of suspension imposed on accused in *Paulson II* October 19, 2006

In re Complaint as to the Conduct of

# LAUREN PAULSON,
*Accused.*

## (OSB No. 04-26; SC S53185)

145 P3d 171

See also, 341 Or 13, 136 P3d 1087.

Lauren Paulson, Aloha, argued the cause and filed the brief for himself.

Stacy J. Hankin, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the brief for the Oregon State Bar.

Before De Muniz, Chief Justice, and Gillette, Durham, Riggs,* Balmer, and Kistler, Justices.**

---

* Riggs, J., retired September 30, 2006, and did not participate in the decision of this case.

PER CURIAM

---

** Carson and Walters, JJ., did not participate in the consideration or decision of this case.

## PER CURIAM

In this lawyer disciplinary proceeding, the Oregon State Bar charged the accused with violating Oregon Code of Professional Responsibility Disciplinary Rules (DR) 7-104(A)(1) (knowingly contacting a represented person on a subject directly related to the representation); DR 4-101(B)(1) (knowingly revealing client secrets); DR 4-101(B)(2) (knowingly using client secrets to disadvantage of client); and DR 1-103(C) (failing to cooperate with disciplinary investigation).[1] A trial panel of the Disciplinary Board found that the accused had violated each of those rules and suspended him for four months. We affirm the trial panel's decision.

This case arises in an unusual posture. On review, the accused does not challenge either the trial panel's findings that he violated the disciplinary rules or the sanction that the trial panel imposed for those violations.[2] The Bar also does not challenge either the trial panel's findings or the sanction. Given that procedural posture, we do not believe that an extended discussion of either the facts or the sanction would benefit bench or bar. We summarize our findings instead.

■ We find by clear and convincing evidence, as the trial panel did, that the accused violated four disciplinary rules. Specifically, we find that the accused met with his client, Dascher, and a former client, Wiren, regarding claims that Wiren had sexually abused Dascher's daughter. The accused knew, when he met with Dascher and Wiren, that another lawyer represented Wiren on the sexual abuse charges and that Wiren's lawyer had not consented to the meeting. The accused's conduct violated DR 7-104(A)(1), which prohibits knowingly contacting a represented person on a subject directly related to the representation.

---

[1] The Oregon Rules of Professional Conduct became effective January 1, 2005. Because the conduct at issue in this case occurred before that date, we apply the Oregon Code of Professional Responsibility.

[2] The accused does raise certain matters that he characterizes as "affirmative defenses" and certain procedural objections. We address those matters later in this opinion.

■ Later, at a hearing where the accused was representing Dascher, he knowingly revealed a secret regarding his former client, Wiren, in violation of DR 4-101(B)(1), and he knowingly used that information to Wiren's disadvantage in violation of DR 4-101(B)(2). Finally, when the Bar investigated the accused regarding those charges, the accused repeatedly failed to comply with the Bar's reasonable requests for information in violation of DR 1-103(C).

Based on those violations, the trial panel suspended the accused from the practice of law for four months. Although the sanction that the trial panel imposed is lenient, it is within the range of permissible sanctions. In the absence of any objection to that sanction from either the accused or the Bar, we accept it.

In his brief on review, the accused raises what he characterizes as "affirmative defenses" to the Bar's charges and also objects to various procedures that the Bar used. We address four of the accused's arguments in this opinion. We have considered the remainder of his arguments and reject them without further discussion.

■ The accused's two primary defenses are related. He asserts that the Bar initiated this and other disciplinary proceedings against him in retaliation for his Bar activities and also to prevent him from expressing his opinions. He contends that the Bar's decision to pursue those disciplinary charges violated his rights to free speech and due process under the First and Fourteenth Amendments to the United States Constitution. Having reviewed the record in its entirety,[3] we find that the accused has failed to prove that the Bar initiated this disciplinary proceeding either to retaliate against him or to prevent him from expressing his opinions. If, as we find, the accused has failed to prove that the Bar initiated this proceeding for an impermissible reason, then the accused's constitutional claims necessarily fail.[4]

---

[3] Much of the alleged "evidence" on which the accused relies is not in the record. We decline to consider that evidence because "we review lawyer disciplinary matters on the record that was before the trial panel." *In re Harris*, 334 Or 353, 357, 49 P3d 778 (2002).

[4] Given those factual findings, we need not decide whether the accused's version of the facts, if true, would rise to the level of a due process violation. Similarly,

■ The accused also argues that the Bar's Board of Governors, with the disciplinary counsel's participation, "actually appoints the disciplinary board." The accused recognizes that the Supreme Court in fact appoints the members of the Disciplinary Board, from which the three-person trial panel that heard his case was drawn. In his view, however, the court does not exercise independent authority over the appointment process but merely accepts the Bar's recommendation.

■ As we understand the accused's argument, he does not contend that any person on his trial panel was biased against him.[5] Rather, his argument rests on the proposition that the Bar, along with the Bar's disciplinary counsel, plays too large a role in the appointment process. The record, however, does not support the accused's claim that this court did not exercise independent judgment in appointing the members of the Disciplinary Board. Beyond that, in light of this court's *de novo* review in disciplinary cases, the deficiency that the accused perceives in the appointment process has no effect on either the fairness or the legitimacy of our conclusion that the accused committed the charged disciplinary violations. *See In re Reuben G. Lenske*, 269 Or 146, 164, 523 P2d 1262 (1974) (explaining that "[t]he fact that the Board of Governors of the Oregon State Bar may have been selected by what is referred to by the accused as an 'undemocratic process' does not invalidate these [disciplinary] proceedings").

Finally, the accused argues that Oregon State Bar Bylaw § 18.6 is an unconstitutional bill of attainder. *See* US Const, Art I, § 10, cl 1 (prohibiting bills of attainder). That bylaw suspends a member of the Bar's Board of Governors (board) from service on the board during the pendency of formal misconduct charges. The accused is a member of the board currently suspended from service as a result of the

we need not decide whether the accused's free speech claim constitutes a defense to a disciplinary charge.

[5] Bar Rule of Procedure (BR) 2.4(g) authorizes an accused to make one peremptory challenge and an unlimited number of challenges for cause to members of a trial panel. The rule requires, however, that an accused make any challenge in writing within seven days of written notice of the appointment of the trial panel. In this case, the accused did not challenge any member of the trial panel under that rule.

bylaw. The constitutional challenge that the accused raises is irrelevant to this proceeding, however. The question whether the bylaw is a bill of attainder has no bearing on the question whether the accused committed the charged disciplinary violations.[6]

**7.** Having considered all the accused's arguments, we find that he committed the four charged disciplinary violations and suspend him from the practice of law for four months. We note that the accused currently is suspended from the practice of law for six months as a result of an earlier disciplinary proceeding. *See In re Paulson (Paulson II)*, 341 Or 13, 34, 136 P3d 1087 (2006) (imposing six-month suspension). The four-month suspension resulting from these disciplinary violations will run consecutively to that suspension. *See In re Meyer (II)*, 328 Or 220, 229, 970 P2d 647 (1999) (imposing consecutive sentence in similar circumstances).

The accused is suspended from the practice of law for a period of four months, with the period of suspension to run consecutively to the period of suspension imposed on the accused in *Paulson II*.

---

[6] The accused also argues that the trial panel violated ORS 45.400 when it allowed an adverse witness to testify by telephone. ORS 45.400(1) provides that, if certain conditions are met, courts may order a witness to testify by telephone in "any civil proceeding" or juvenile dependency proceeding. By its terms, that statute does not apply to a trial panel's hearing in Bar disciplinary proceedings. *See* ORS 9.529 (describing nature of bar disciplinary proceedings); *In re Harris*, 334 Or at 359-61 (same).