Argued and submitted December 10, 2008, case remanded to Disciplinary Board
for appointment of new trial panel to hear charges against the accused
April 2, 2009

## In re Complaint as to the Conduct of

## R. KEVIN HENDRICK,
*Accused.*

## (OSB 06-110; SC S056041)

208 P3d 488

Mary A. Cooper, Assistant Disciplinary Counsel, Tigard, argued the cause and filed the brief for the Oregon State Bar.

Andrew P. Ositis, Salem, argued the cause and filed the brief for the accused.

PER CURIAM

Kistler, J., dissented and filed an opinion, in which Linder, J., joined.

## PER CURIAM

The issues in this lawyer disciplinary proceeding are whether the Oregon State Bar (Bar) committed a procedural error in connection with the accused's disciplinary proceeding and, if it did, whether the remedy for such an error is dismissal of the charges against the accused. For the reasons that follow, we conclude that the Bar did commit a procedural error, but that the appropriate remedy is to remand the case for a hearing before a new trial panel.

In October 2006, the Bar filed a complaint against R. Kevin Hendrick (the accused), charging him with various violations of the Rules of Professional Conduct (RPC). In January 2007, the Disciplinary Board appointed a trial panel to hear the Bar's case against the accused. The accused and the Bar each made a peremptory challenge to a member of the trial panel pursuant to Bar Rule of Procedure (BR) 2.4(g), set out *post* 346 Or at 103; in each instance, the Disciplinary Board replaced the challenged member. After the replacement trial panel members were appointed, the hearing was scheduled for July 24 - 25, 2007.

On July 10, 2007, the Bar sent a letter to the accused's lawyer explaining that, before the hearing, it intended to deliver to the accused and to the trial panel notebooks that contained the exhibits on which the Bar intended to rely at the hearing. The Bar requested that the accused review the exhibits and notify it of any objections that the accused might have. The accused did not make any objection to that procedure at that time. On July 17, 2007, the Bar sent the accused and the trial panel a copy of its trial memorandum. In the cover letter accompanying that document, the Bar informed the trial panel that it would be providing the trial panel and the accused with the notebook of proposed exhibits before the hearing, and again asked the accused's lawyer to notify it of any objections that the accused might have to any of those exhibits. Again, the accused offered no objection either to the delivery of the trial memorandum or to the Bar's plan to deliver its proposed exhibits to the trial panel in advance of the hearing. On July 19, 2007, the Bar hand-delivered the exhibit notebooks to the trial panel and to the accused. Again, the accused did not object.

On July 24, 2007, the first day of the hearing, the accused filed a motion to dismiss the charges, claiming that the Bar's early delivery of the exhibit notebooks constituted an improper *ex parte* communication with the trial panel. The trial panel denied the accused's motion, asserting that the communication was not *ex parte* because the Bar had provided the accused with the same documents, at the same time, as it had the trial panel. The panel also noted that the accused had had advance notice of the Bar's intent to serve the exhibit notebooks and had not objected.

The hearing proceeded. At some point, a document was introduced into evidence that revealed to one of the trial panel members that she had opposed the accused in another, possibly related, matter. After a brief conversation off the record involving Bar counsel, the accused, and the accused's counsel about the possible conflict, the parties elected not to proceed with the existing trial panel. The trial panel chairperson closed the hearing and dismissed the trial panel, announcing that "a new panel needs to be appointed."

In August 2007, the Disciplinary Board appointed a new trial panel. The new panel did not include any of the former panel members. Five days later, the accused served notice that he intended to challenge peremptorily one of the new trial panel members. The Bar objected, noting that the accused previously had exercised a peremptory challenge to a member of the former trial panel and asserting that, under the relevant Bar rule, the accused was not entitled to an additional peremptory challenge. The accused responded that the appointment of a new trial panel entitled him to a new peremptory challenge. The Disciplinary Board chairperson rejected the accused's argument, disallowed the peremptory challenge, and notified the parties that a panel consisting of the three members appointed in August 2007 would hear the case.

A hearing before the new trial panel was scheduled for February 2008. This time, the Bar did not distribute its exhibit notebooks in advance and the new trial panel did not see the exhibits until the trial date. The hearing proceeded. On March 31, 2008, the panel issued its opinion, which was adverse to the accused in some respects. The accused then

sought review by this court pursuant to ORS 9.536(1) and BR 10.1.

On review, the accused does not raise directly any issue concerning the substance of the trial panel's decision. Instead, the accused argues that two alleged procedural errors by the trial panel so deprived him of important procedural rights that this court should dismiss the entire disciplinary action against him. The accused contends, first, that the Bar violated his due process rights by engaging in *ex parte* contacts with the first trial panel and, therefore, the first trial panel should have dismissed the charges against him. Second, the accused argues that he was improperly denied the right to exercise a peremptory challenge to a member of the second trial panel and, therefore, this court should dismiss the charges against him. As we shall explain, we find no merit in the accused's first claim, but some merit in the second.

With respect to the accused's first argument (concerning the Bar's allegedly improper *ex parte* communications with the first trial panel), the accused argues at some length why he thinks that the Bar's conduct in delivering its exhibits to the trial panel in advance of the disciplinary proceeding violated the Bar's rules for the conduct of such proceedings and why *ex parte* communications with a factfinder are not permissible. However, in making those arguments, the accused neglects several key points, any one of which is fatal to his position. We discuss fully only the most fundamental one.

■ That fundamental point is that the Bar's communications with the trial panel were not *ex parte*. *Black's Law Dictionary* defines the phrase *ex parte* as follows: "Done or made at the instance and for the benefit of one party only, and without notice to, or argument by, any person adversely interested; of or relating to court action taken by one party without notice to the other, usu. for temporary or emergency relief." *Black's Law Dictionary* 616 (8th ed 2004). Thus, an essential feature of an *ex parte* communication is that it is made without notice to the opposing party. Here, documents attached to the accused's own opening brief show that the Bar fully apprised the accused of its intent to provide the trial

panel with an advance copy of its exhibits and that, when it did so, it also provided the accused with copies of everything that it gave the trial panel. The Bar did not engage in *ex parte* communications with the trial panel. The accused's argument in that respect is not well taken.[1]

■   The accused's second argument is that the regional chairperson in charge of ruling on challenges to members of trial panels erred in failing to permit him under BR 2.4(g) to exercise a peremptory challenge to a member of the second trial panel, that the error was prejudicial, and that the charges against him therefore should be dismissed. We set out certain details of the trial panel appointment process to explain our analysis of the accused's argument.

The Bar's Disciplinary Board consists of a state chairperson, six regional chairpersons, and at least six additional members from each of the regions. BR 2.4(a). When the Bar files a formal complaint and Bar Counsel notifies the Disciplinary Board of that filing, BR 4.1(a), the regional chairperson "appoint[s] a trial panel from the members of the regional panel and a chairperson thereof." BR 2.4(f)(1).

Once "a trial panel" has been appointed, both the accused and the Bar may, under BR 2.4(g), challenge the participation of members of that trial panel. That section is at the heart of our inquiry. It provides, in part:

"The Bar and an accused * * * shall be entitled to one peremptory challenge and an unlimited number of challenges for cause as may arise under the Code of Judicial Conduct or these rules. Any such challenge shall be filed in writing within seven days of written notice of an appointment of a trial panel with the Disciplinary Board Clerk, with copies to the regional chairperson for disciplinary proceedings * * *. Challenges for cause shall state the reason for the challenge. The written ruling on the challenge shall be filed with the Disciplinary Board Clerk, and the regional chairperson * * * shall serve copies of the ruling on all parties. These provisions shall apply to all substitute appointments, except that neither the Bar nor the accused shall have more than [one] peremptory challenge. * * *."

---

[1] The accused's argument also fails because the Bar's communication was to a separate trial panel that did not decide his case.

The accused concedes that the rule, read in isolation, is silent as to whether the "one peremptory challenge" limitation in BR 2.4(g) applies to each appointed trial panel, when two or more trial panels have been appointed serially, or, instead, applies to the case as a whole. But, he argues, when the rule is read in context with BR 2.4(h), which directs the Disciplinary Board Clerk to "mail to the trial panel finally selected" a copy of all pleadings, and then directs the trial panel chairperson promptly to select a date and place for the hearing, it becomes clear that the rule applies to each appointed trial panel. The Bar, on the other hand, argues that BR 2.4(g) is *not* silent on the matter because it states specifically that its provisions concerning challenges "shall apply to all substitute appointments, except that neither the Bar nor the accused shall have more than [one] peremptory challenge." The Bar argues that the second panel was a "substitute appointment ('for cause') of *all* members of the first trial panel." (Emphasis in original.) And, the Bar explains, BR 2.4(g) specifically provides that, no matter how many substitute appointments are made, each side may exercise only one peremptory challenge.

We agree with the accused that BR 2.4(g) does not clearly specify whether the allocation of one peremptory challenge per side applies to the case as a whole or to each separate appointment of a complete trial panel, in cases in which separate, successive trial panels are appointed. On the other hand, we agree with the Bar that the wording in BR 2.4(g) on which it relies could, at least when read in isolation, justify the outcome that the Bar seeks. But we do not think that it is appropriate to read the wording on which the Bar relies in that way.

The reason that we do not find the wording on which the Bar relies dispositive is that other wording of the rule supports a contrary conclusion. The right to a peremptory challenge does not arise until "a trial panel" has been appointed. BR 2.4(g) specifies that "[a]ny such challenges shall be filed in writing within seven days of written notice of *an appointment of a trial panel*." (Emphasis added.) The emphasized wording just as easily could be read to mean "any" trial panel (the accused's reading) as it could be read to mean "the one and only" trial panel (as the Bar would have

it). Thus, both parties have legitimate—but hardly conclusive—arguments to support their positions.

As noted, the Bar argues that there is separate contextual support for its view in this further provision of BR 2.4(g): "These provisions shall apply to *all substitute appointments*, except that neither the Bar nor an accused * * * shall have more than [one] peremptory challenge." (Emphasis added.) The Bar argues, in effect, that the second trial panel was a "substitute" for the first, so that the accused is foreclosed from making a peremptory challenge to any member of the second trial panel. The accused responds that the reference to "substitute appointments" in the rule is a reference to the replacement of a member of an existing trial panel, *i.e.*, that the wording is intended to make it clear that the right to challenge a member of a trial panel includes the right to challenge a substitute member, if the challenging party has not already exercised its peremptory challenge by the time that the substitute panel member is appointed.

In interpreting a Bar rule, this court looks to the wording of the rule, read in context. *See In re Haws*, 310 Or 741, 746-48, 801 P2d 818 (1990) (using that methodology to interpret disciplinary rule, focusing on meaning of rule's key words). Nothing in BR 2.4(g) tells us whether a "substitute appointment" refers to appointment of persons to replace individual members of a particular trial panel or, instead, includes the more sweeping exercise of authority to appoint a trial panel that is new and different *in toto* from an earlier panel. No contextual or other clues resolve the ambiguity. Lacking any other source to assist us, we look to the purposes of the right to make a peremptory challenge.

The right is not a constitutional one. Due process does not require that the Bar make peremptory challenges—as opposed to challenges for cause—available at all. Instead, like other procedural trial rights, the right to exercise a peremptory challenge is intended to foster a sense of confidence in the system by those who are subject to disciplinary proceedings. Allowing an accused lawyer to remove a member of a new, separately appointed trial panel by peremptory challenge would advance that purpose. As this case developed, the accused exercised his right to a peremptory challenge

before the first trial panel with the expectation that he at least had been able to reduce the known members of the trial panel to the two persons out of the original three whom he thought were most likely to give him a fair hearing. With the total change of panels, however, that assurance was lost— the accused faced three different people and was powerless to remove any of them, in the absence of cause. Leaving an accused lawyer in that position does not further the goals that are fostered by the right to make peremptory challenges.

We view the accused's position as analogous to that of a criminal defendant in a jury trial who has exercised his available peremptory challenges, but then loses the benefit of those challenges when the entire jury is dismissed due to a mistrial. We do not believe that anyone questions such a defendant's right thereafter to exercise peremptory challenges during the selection of a new jury panel. Still, the analogy on which we rely is useful, but not necessarily controlling, and the issue that we are addressing remains a close one. Ultimately, however, we are persuaded by a combination of the analogy that we have noted and another, perhaps even more persuasive consideration. That consideration is the nature of this kind of case, and of our relationship to it.

In Bar disciplinary proceedings, the Bar serves as a surrogate for this court. That is, it investigates and (where it appears appropriate) prosecutes possible disciplinary violations, with a view to assisting this court in ensuring that practicing members of the Bar behave in an ethical manner. This court, if it were performing that function itself, would make every attempt to see to it that, whatever the outcome, an accused lawyer would think that he or she was treated fairly in the process. We read the Bar Rules as promoting that same goal and, as we have explained, we view the right to a peremptory challenge to be a part of that effort. If it were our own rule, we would read it to permit a new peremptory challenge if an entirely new panel were summoned, because reading the rule in that way would foster a sense of fairness in the system. We take that same view respecting our surrogate—the Bar. We hold that the Disciplinary Board chairperson erred in denying the accused the right to exercise a peremptory challenge to one of the members of the second trial

panel. We turn to a consideration of the remedy, if any, to which the accused is entitled in light of that error.

■ In an ordinary lawyer disciplinary proceeding, this court performs a *de novo* review of the facts respecting the charges against the accused lawyer and then either adopts, modifies, or rejects the decision of the trial panel. BR 10.6. Thus, it could be argued that any error respecting the composition of the trial panel technically would be "cured" by our separate review of the record. Indeed, that is the view adopted by the dissent, and it has some force. In this case, however, the accused's case was not heard by a properly constituted trial panel: One person whom the accused was entitled to have removed nonetheless participated. To use another analogy, the accused's position is analogous to that of a party to a circuit court case who timely has made a motion for a change of judge, but the challenged judge unaccountably declines to step aside. In such circumstances, we think that all would agree that the issue is not whether the resisting judge can be (or is, or has been) fair. Instead, the issue is whether the objecting party must accept an adverse outcome if that judge tries the case. As to that issue, we think that the party's right to a second trial before a different judge follows from the nature of the right itself. And, if the trial panel was not properly constituted, there is no way to know whether a properly constituted trial panel would have created the same record, made the same rulings, or construed the evidence in the same way, much less reached the same conclusions that this one did.

Finally, and in addition to the foregoing, we note that, were we simply to exercise our *de novo* review authority and decide the accused's case on the merits notwithstanding our conclusion that the accused was denied a procedural right guaranteed by the Bar's rules, his ability to exercise that right would be profoundly undercut. Put differently, if we were to decide that this court's *de novo* review of decisions of trial panels means that, as a matter of law, an accused lawyer is not prejudiced by the denial of one or more procedural rights during the course of a disciplinary proceeding, no

accused lawyer's procedural "rights" have any certain meaning—*de novo* review may trump any of them. We decline to take that view. The accused is entitled to some sort of relief.[2]

That said, however, we reject the accused's argument that the appropriate remedy for this violation of his procedural right is to dismiss the charges against him. This error—like most others—can be cured fully by affording the accused a new hearing at which he may (if he so chooses) exercise his right peremptorily to remove one trial panel member. We therefore remand the case to the Disciplinary Board for the appointment of a new trial panel to hear the charges against the accused.

The case is remanded to the Disciplinary Board for the appointment of a new trial panel to hear the charges against the accused.

**KISTLER, J.,** dissenting.

The majority holds that the Bar should have given the accused another peremptory challenge when it impaneled a new trial panel, and it remands this case for a new hearing because of that error. I agree with the majority that, under the Bar's rules, the accused was entitled to another peremptory challenge. I part company, however, from the majority when it remands this case for a new hearing. In effect, and without citing any authority, the majority holds that the erroneous denial of a peremptory challenge in a bar disciplinary proceeding automatically requires a new hearing. This court, however, has rejected the notion that a similar error in the composition of a trial panel automatically required a new hearing, and the underlying substantive

---

[2] The dissent's opposing view relies heavily on *In re Paulson*, 341 Or 542, 145 P3d 171 (2006), but that reliance is misplaced. *Paulson* was a case in which the accused, in a scattershot argument, accepted the idea that the members of his trial panel might be objective and honorable, but nonetheless argued that any decision that they made should not be sustained because they were "hand picked" by the hierarchy of the Bar and that hierarchy—in the accused's view—was biased against him. This court there suggested that its *de novo* review authority was a bulwark against the problem that the accused described. *Id.* at 546. Here, however, the accused has an actual right—not simply a generalized complaint based on dark suspicion—to have a panel member removed. Vindication of that right cures the problem. Where, as here, there is a path that we can follow that vindicates a clear right, it is that path that we shall follow.

issue in this case involves only a legal question—whether the accused's actions constituted the practice of law. Because there is no legal or procedural reason to remand this case for a new hearing, I respectfully dissent.

Before turning to the question whether a remand is required, it is helpful to put that question in perspective. Chex Systems, Inc., maintains a list of persons with a history of overdrawn checks or closed accounts and provides that information to banks. If a person is on Chex Systems' list, that person frequently will have difficulty opening a new bank account.

The accused, doing business as Valley Law Center, offered consumers help in getting off Chex Systems' list. The website for Valley Law Center told consumers that, in return for an advance payment of $249, Valley Law Center would help them remove their names from Chex Systems' list. The website also explained why Valley Law Center's services were superior to nonlegal alternatives. According to the website, the "most important reason [why Valley Law Center provides effective help] is that we are an actual Law Firm. We know the law and we use our legal knowledge and extensive experience to get you out of [Chex Systems]."

The accused received advance payments from multiple clients for his help in removing their names from Chex Systems' list. The accused, however, did not deposit those payments in a separate trust account, and the Bar charged the accused with violating two Rules of Professional Conduct (RPC): RPC 1.15-1(a) (failure to deposit and maintain client funds in a separate trust account) and RCP 1.15-1(c) (failure to deposit advance payments in a lawyer trust account).[1]

Before the trial panel, the accused did not dispute that, if he were engaged in the practice of law, his failure to deposit the advance payments in a separate trust account violated both ethical rules. The accused argued, however, that all that he did for his clients was send a series of form

---

[1] The Bar also charged the accused with violating RPC 1.15-1(d) (failure to promptly deliver funds to a client), but the trial panel found that the Bar had not proved that charge by clear and convincing evidence. The Bar does not challenge that ruling on review.

letters, under the client's signature, to Chex Systems and that those form letters did not constitute the practice of law. In essence, the accused's defense before the trial panel turned on whether the undisputed facts established that he was or was not engaged in the practice of law. The trial panel ruled that the accused was engaged in the practice of law and accordingly found that the Bar had proved both rule violations.

On review before this court, the accused does not argue that the trial panel erred in resolving the legal issue on which its decision turned—whether the letters that he sent on behalf of his clients constituted the practice of law. Nor does he argue that the trial panel erred in admitting any evidence or making any factual finding.[2] Rather, the accused argues that, under Bar Rule of Procedure (BR) 2.4(g), the panel should have allowed him to exercise a peremptory challenge against one of its members.[3]

Even though the accused does not challenge on review the legal issue on which the trial panel's decision turned and even though the accused does not identify any reason why the Bar's procedural error would affect our ability to decide that legal issue (if he had raised it on review), the majority holds that the erroneous denial of a peremptory challenge entitles the accused to a new hearing before a different trial panel. In effect, the majority holds that the denial of peremptory challenge in a bar disciplinary hearing is a structural error that always requires a new hearing.

The majority paints with too broad a brush. To be sure, some procedural rights are so fundamental that the denial of the right requires a new trial even if the procedures a party received were fundamentally fair. The right to a jury trial provides an obvious example, as does the right to an unbiased decision-maker. *See, e.g., Thompson v. Coughlin*, 329 Or 630, 640, 997 P2d 191 (2000) (jury trial); *Ward v.*

---

[2] The accused also argues on review that the Bar engaged in an improper *ex parte* contact with the first trial panel. As the majority correctly explains, however, the Bar acted properly.

[3] The accused did not seek to recuse the panel member for cause, and he has not argued either before the trial panel or this court that he has any basis for saying that the panel member was biased against him.

*Village of Monroeville*, 409 US 57, 61-62, 93 S Ct 80, 34 L Ed 2d 267 (1972) (unbiased decision-maker); *cf. Rivera v. Illinois*, 556 US ___, ___, 129 S Ct 1446, 1453, 173 L Ed 2d 320 (2009) ("If a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court's good-faith error is not a matter of federal constitutional concern."). But the right granted by the Bar Rules to excuse a member of a trial panel for any reason or no reason at all does not rise to the same level as those fundamental constitutional rights, as this court has recognized in two functionally indistinguishable cases. *See In re Paulson*, 341 Or 542, 546, 145 P3d 171 (2006) (rejecting challenge to composition of trial panel because the challenge, even if correct, did not affect this court's ability to decide on *de novo* review whether the accused committed the charged ethical violations); *In re Reuben G. Lenske*, 269 Or 146, 164-65, 523 P2d 1262 (1974) (same).

It is also true that some procedural errors may affect the development of a record in a way that cannot be cured on appeal, even on *de novo* review. In those instances, the case has to be remanded for a new hearing. But this court has never held that every procedural error requires a remand. Some errors are, after all, harmless, and the inquiry is or should be whether a procedural error affected the trial panel's decision in a way that requires a new hearing. In this case, the accused has not even attempted to identify any way in which the erroneous denial of a peremptory challenge affected either his ability to create a record or our ability to correct any perceived error in the trial panel's resolution of the charges against him. Perhaps the accused has not done so because the only real dispute below appears to have been whether his undisputed acts on behalf of his clients constituted the practice of law. Had the accused chosen to raise that legal issue on review, we could have addressed it and resolved it one way or the other. However, without any challenge to that issue and without some basis for thinking that the Bar's procedural error affected our ability to review these proceedings, I would affirm the trial panel's decision.

The majority advances two reasons for reaching a contrary conclusion. It reasons initially that we can never

know whether the failure to permit an accused to exercise a peremptory challenge affected either the record or our ability to review the charges against the accused. The majority's reasoning goes too far. If, as in this case, the essential facts are undisputed and the only question is legal, then it is difficult to see how the failure to permit the accused to exercise a peremptory challenge affects our ability to determine whether the accused's acts constituted the practice of law. As a subsidiary matter, I would put the obligation on the party challenging the trial panel's decision to explain why a procedural error affected the record in a way that requires a remand. In the proper case, the point can be easily made.[4] Here, however, the accused has not attempted such a showing.

The majority advances a second reason in support of its automatic remand for a new hearing. It reasons that, if

"we were to decide that this court's *de novo* review of decisions of trial panels means that, as a matter of law, an accused lawyer is not prejudiced by the denial of one or another procedural rights during the course of a disciplinary proceeding, no accused lawyer's procedural 'rights' have any certain meaning—*de novo* review may trump any of them."

346 Or at 107-08. The majority takes aim at the wrong target. The Bar has not suggested that *de novo* review trumps every procedural right. The denial of some procedural rights may affect the record or the panel's fact-finding, as noted above. And, as also noted above, some procedural rights may be so fundamental that their denial will always require a new hearing. But this court has never held that the denial of every procedural right requires a new hearing, nor has it held that the denial of the sort of right at issue here requires one.

---

[4] For instance, on *de novo* review, this court defers to some credibility determinations that the trial panel makes. *See In re Fitzhenry*, 343 Or 86, 103-04, 162 P3d 260 (2007) (explaining that this court will defer to credibility determinations based on the "accused's demeanor and manner of testifying" but not credibility determinations based on "objective factors"). When the proof of a charge turns on a credibility determination to which we will defer, then the composition of the trial panel may make a difference and a new hearing may be appropriate. As noted, the accused does not argue that that circumstance, or a similar difficulty, is present in this case.

Rather, it has reached precisely the opposite conclusion. *See Paulson*, 341 Or at 546 (alternative holding).

In *Paulson*, the accused argued that the Board of Bar Governors and the Bar's disciplinary counsel " 'actually appoints the disciplinary board,' " from which the trial panels are drawn, and that this court had abandoned its responsibility to exercise independent authority over the appointment process. *Id.* at 546. After noting that the record did not support the accused's argument, this court offered an alternative reason why his argument did not provide any basis for ordering a new hearing before a different trial panel. The court began by noting that the accused did not argue that "any person on his trial panel was biased against him." *Id.* The court then explained that, even if the accused's charge were correct, "in light of this court's *de novo* review in disciplinary cases, the deficiency that the accused perceives in the appointment process has no effect on either the fairness or the legitimacy of *our* conclusion that the accused committed the charged disciplinary violations." *Id.* (emphasis added); *see also Lenske*, 269 Or at 164 ("The fact that the Board of Governors of the Oregon State Bar [who concluded that the accused had committed certain ethical violations] may have been selected by what is referred to by the accused as an 'undemocratic process' does not invalidate these [disciplinary] proceedings.").

*Paulson* establishes that, contrary to the majority's reasoning, not every procedural error that affects the composition of a trial panel requires a new hearing. More importantly, *Paulson* establishes that there is no basis for remanding for a new hearing in this case: The procedural error in this case is functionally indistinguishable from the claimed procedural error in *Paulson*. In this case, as in *Paulson*, the accused did not seek to recuse the panel member for cause; that is, he did not argue that there was any basis for saying that the panel member was biased against him. The accused did, however, seek to exercise a peremptory challenge against the panel member. A party can exercise a peremptory challenge for any reason or no reason at all, but the accused presumably sought to exercise a peremptory challenge in this case because he suspected that the panel member,

although neutral and unbiased, might not be receptive to his arguments.

In *Paulson*, the accused argued that the perceived procedural deficiency in that case resulted in precisely the same problem; that is, the accused argued in *Paulson* that the Bar and its disciplinary counsel had handpicked the trial panel members and that those panel members, although neutral and unbiased, were not receptive to the accused's arguments. If, as this court explained in *Paulson*, that perceived deficiency in the composition of the trial panel "has no effect on either the fairness or the legitimacy of our [determination whether] the accused committed the charged disciplinary violations," 341 Or at 546, then it is difficult to see why a different rule should apply here. The majority errs in automatically remanding this case for a new hearing. I respectfully dissent.

Linder, J., joins in this dissent.